EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sociedad para la Asistencia Legal, Inc.<br><br>    Recurrida<br><br>               v.<br><br>Instituto de Ciencias Forenses de Puerto Rico, et als.<br><br>    Peticionarios | Certiorari<br><br>2010 TSPR 196<br><br>179 DPR ____ |

Número del Caso: CC-2010-365

Fecha: 16 de septiembre de 2010

Tribunal de Apelaciones:

        Región Judicial de San Juan Panel II

Juez Ponente:        Hon. José A. Morales Rodríguez

Oficina de la Procuradora General:

                Lcda. Daphne M. Cordero Guilloty
                Procuradora Genera Auxiliar

Abogado de la Parte Recurrida:

                Lcdo. Felix A. Cifredo Cancel

Materia: Mandamus

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sociedad para la Asistencia Legal, Inc. | *Certiorari* |
| Recurrida | |
| v. | CC-2010-365 |
| Instituto de Ciencias Forenses de Puerto Rico, *et als*. | |
| Peticionarios | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 16 de septiembre de 2010.

Comparecen ante nos el Estado Libre Asociado de Puerto Rico y el Instituto de Ciencias Forenses, en adelante, los peticionarios, y nos solicitan la revisión de una Sentencia emitida por el Tribunal de Apelaciones. Mediante dicho dictamen, el tribunal *a quo* revocó una Sentencia emitida por el Tribunal de Primera Instancia en la que denegó la Demanda de *mandamus* instada por la Sociedad para la Asistencia Legal, Inc., en adelante, la recurrida, solicitando la entrega de unos informes de autopsia y de otras pruebas científicas.

En esta ocasión tenemos la oportunidad de resolver si el Instituto de Ciencias Forenses tiene el deber de entregar a la defensa los protocolos de autopsia y los resultados de los análisis científicos que efectúe con relación a un caso criminal, al mismo tiempo que los pone a disposición del Ministerio Público, aunque éste no haya presentado el correspondiente pliego acusatorio contra el acusado. *A priori*, contestamos en la negativa.

Veamos los hechos que dieron génesis a la controversia de autos.

I

El 22 de diciembre de 2008 la recurrida presentó una Demanda ante el Tribunal de Primera Instancia, Sala Superior de Humacao, contra el Instituto de Ciencias Forenses de Puerto Rico.[1] Peticionó que se le ordenara al Director del Instituto de Ciencias Forenses y a sus funcionarios a que cumplieran con el deber ministerial que alegadamente les imponía el Art. 20 de la Ley Núm. 13 de 24 de julio de 1985, según enmendada, conocida como Ley del

---

[1] Originalmente la recurrida instó su Demanda únicamente contra el Instituto de Ciencias Forenses, la cual fue declarada Con Lugar por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 3 de febrero de 2009. No obstante, este dictamen se dejó sin efecto el 2 de marzo de 2009 por no haberse incluido al Estado Libre Asociado de Puerto Rico como codemandado.

A solicitud de la recurrida, el foro de instancia ordenó que se expidieran emplazamientos dirigidos al Estado por conducto del Secretario de Justicia. Sin embargo, esa Orden se tornó académica toda vez que el Estado se sometió a la jurisdicción del tribunal el 13 de abril de 2009 por medio de la presentación de dos (2) escritos titulados *Moción de Desestimación* y *Moción en Oposición a Moción Informativa Solicitando que se Anote la Rebeldía*.

Posteriormente, el caso fue trasladado a la Sala Superior de San Juan donde continuaron los procedimientos.

Instituto de Ciencias Forenses de Puerto Rico, 34 L.P.R.A. sec. 3020. Esto es, entregarle a los abogados de defensa los informes de autopsia y demás pruebas científicas relacionadas con aquellos casos en que la recurrida asumía la representación de la persona que era acusada de haberle ocasionado la muerte a la presunta víctima. Señaló, que el Instituto de Ciencias Forenses y sus funcionarios le exigían a los abogados de la defensa que presentaran mociones ante los tribunales solicitando los protocolos de autopsia para que estos foros autorizaran, caso a caso, la entrega de estos informes. Sostuvo que la Ley Núm. 13, *supra*, no exigía tal requerimiento. Adujo, que tal exigencia sobrecargaba la pesada labor de los abogados y que ello provocaba suspensiones en los procesos judiciales.

Luego de varios incidentes procesales, el 26 de junio de 2009, los peticionarios presentaron una moción solicitando que se dictara sentencia sumaria a su favor. Argumentaron que, aunque el Art. 20 de la Ley Núm. 13, *supra*, disponía que los informes debían ser entregados con toda premura a los fiscales o al juez instructor, "en ningún momento establece que les serán, de igual forma, entregados a [los abogados de defensa] en el mismo momento."[2] Además, sostuvieron que, conforme al Art. 27 de la Ley Núm. 13, 34 L.P.R.A. sec. 3027, los protocolos de autopsia en un caso criminal no se entregaban hasta que concluía la investigación, a menos que lo autorizara el

---

[2] Véase, Apéndice de la *Petición de Certiorari*, pág. 56.

Secretario de Justicia o que lo ordenara el tribunal. A su vez, apuntaron que, a tenor con la Regla 95 de Procedimiento Criminal, *infra*, la recurrida no tenía derecho a recibir los informes antes de que se presentara la denuncia o acusación. Acotaron que si la recurrida deseaba obtener copia de esos informes previo a la presentación del pliego acusatorio, podía solicitarlos a través del procedimiento establecido en el Reglamento Núm. 3733 del Departamento de Justicia.[3] Asimismo señalaron, que por estar disponible el mecanismo de descubrimiento de prueba dispuesto en la Regla 95 de Procedimiento Criminal, *infra*, y el procedimiento para solicitar copias de los informes de autopsia establecido en el Reglamento Núm. 3733, *supra*, no procedía el recurso de *mandamus* toda vez que la recurrida contaba con otros remedios legales para hacer valer sus reclamos.

Por su parte, la recurrida presentó debida oposición a la solicitud para que se dictara sentencia sumaria a favor de los peticionarios. Por un lado, alegó que para el momento en que asumía la representación legal de un acusado (luego de la vista de determinación de causa probable para

---

[3] El Reglamento Núm. 3733 del Departamento de Justicia conocido como Reglamento para Solicitar Copias Certificadas de Informes de Autopsias y de Análisis Científicos Relacionados con Investigaciones Criminales, establece los criterios y el procedimiento mediante el cual el Secretario de Justicia podrá autorizar la expedición de copias certificadas de los protocolos de autopsia y de los demás análisis científicos que prepare el Instituto de Ciencias Forenses cuando dichos resultados estén relacionados con un caso criminal cuya investigación criminal esté en proceso. Las disposiciones del Reglamento Núm. 3733, *supra*, están dirigidas a "prevenir cualquier divulgación indebida o inoportuna de detalles críticos para la investigación fiscal referentes a dichos informes que pueda poner en riesgo el éxito de la misma". *Íd*.

arresto), la investigación criminal ya había concluido. Por otro lado, sostuvo que aun cuando el Art. 20 de la Ley Núm. 13, *supra*, no disponía que el protocolo de autopsia se debía entregar con toda premura a los abogados defensores, eso no significa que se tuviera que esperar a que se activara el descubrimiento de prueba regulado por la Regla 95 de Procedimiento Criminal, *infra*, para que éstos se entregaran a la defensa. Arguyó, que la entrega debía hacerse luego de que se hubiera desarrollado la investigación suficiente como para identificar a la presunta víctima y al alegado responsable de la muerte.

Así las cosas, el 14 de septiembre de 2009, el Tribunal de Primera Instancia dictó Sentencia en la que concluyó que la Ley Núm. 13, *supra*, no le imponía al Director del Instituto de Ciencias Forenses el deber de entregarle a la recurrida los informes de autopsia y demás resultados científicos tan pronto ésta los solicitara. Determinó, que si la recurrida deseaba que se le entregaran estos informes, debía cumplir con el procedimiento establecido en el Reglamento Núm. 3733, *supra*, o utilizar el mecanismo de descubrimiento de prueba dispuesto por la Regla 95 de Procedimiento Criminal, *infra*, después de la presentación del pliego acusatorio.

Inconforme con el dictamen, el 30 de diciembre de 2008, la recurrida acudió ante el Tribunal de Apelaciones. Alegó que el Tribunal de Primera Instancia había errado en su decisión ya que el Art. 20 de la Ley Núm. 13, *supra*,

establecía su derecho a recibir los informes de autopsia y otros análisis científicos antes de la vista preliminar; que las limitaciones impuestas por la Ley Núm. 13, *supra*, y el Reglamento Núm. 3733, *supra*, no le aplicaban, debido a que esas limitaciones aplicaban solamente en la etapa investigativa, la cual ya había culminado cuando asumía la representación legal de un acusado.

*A contrario sensu*, los peticionarios sostuvieron que la Ley Núm. 13, *supra*, no establecía el momento en que los referidos informes debían ser entregados; que, conforme a nuestro ordenamiento jurídico, la obligación del Ministerio Público de descubrir prueba se activaba con la presentación del pliego acusatorio; y que no existía norma jurídica que autorizara el que se entregasen los informes con anterioridad a la vista preliminar.

Examinados los argumentos de ambas partes, el 22 de abril de 2010, el Tribunal de Apelaciones emitió una Sentencia en la que señaló:

> A la pregunta de cuándo es que los resultados de una autopsia deben ser puestos a la disposición de la defensa, la ley y la jurisprudencia discutida ofrece una sola posible respuesta: tan pronto esos resultados sean puestos a la disposición del "juez instructor o fiscal", Art. 20 supra. No es aceptable que, amparándose en el Art. 27, la Fiscalia [sic] llegue a una vista preliminar con prueba cientifica [sic] que no ha sido puesta a la disposición de la defensa del imputado del delito. Si los resultados de esos estudios son puestos a la disposición del "juez instructor o fiscal" antes de la vista preliminar, la doctrina en unión al Art. 20, exige que se entreguen a la defensa antes de la vista preliminar.

Por otra parte, con relación al argumento de los peticionarios de que el descubrimiento de prueba se regía por las disposiciones de la Regla 95 de Procedimiento Criminal, *infra*, el tribunal *a quo* sostuvo que:

Los principios constitucionales sustantivos de la dignidad humana, del debido proceso de ley y el derecho a confrontar prueba adversa son de superior jerarquía a los requisitos adjetivos de la Regla 95 de las de Procedimiento Criminal. No se justifica postergar los primeros por exigir que se agoten los rigores de la segunda.

En consecuencia, el Tribunal de Apelaciones revocó la determinación del foro de instancia. En su lugar, el foro apelativo intermedio procedió a dictar Sentencia Declaratoria de conformidad con sus conclusiones ya que entendió que el remedio solicitado por la recurrida podía ser concedido mediante este mecanismo sin necesidad de acudir al recurso de *mandamus*.

Inconformes con tal determinación, el 4 de mayo de 2009, los peticionarios acuden ante nos alegando la comisión del error siguiente:

**Erró el Tribunal de Apelaciones al revocar la determinación emitida por el Tribunal de Primera Instancia y disponer, mediante sentencia declaratoria que, aún [sic] cuando la prueba solicitada está sujeta al descubrimiento de prueba conforme a la Regla 95 de Procedimiento Criminal 34 L.P.R.A. Ap. II R. 95, la Sociedad para la Asistencia Legal, por virtud de lo dispuesto en el Artículo 20 de la Ley del Instituto de Ciencias Forense[s], tiene derecho a reclamar y recibir los informes de autopsia y otras pruebas científicas que hayan sido producidos por Ciencias Forense[s] y entregadas a la Fiscalía.**

Examinada la *Petición de Certiorari*, concedimos a la recurrida un término para mostrar causa por la cual no

debíamos expedir el recurso. Contando con el beneficio de la comparecencia de ambas partes procedemos a resolver conforme lo intimado.

II

La Constitución de Puerto Rico garantiza el derecho de todo acusado a preparar adecuadamente su defensa. *Pueblo v. Santa-Cruz*, 149 D.P.R. 223, 231 (1999). Asimismo, nuestro sistema de justicia criminal le ha reconocido el derecho al acusado de obtener evidencia que pueda favorecerle. *Pueblo v. Guzmán*, 161 D.P.R. 137, 147 (2004); *Pueblo v. Arocho Soto*, 137 D.P.R. 762, 766 (1994).

El mecanismo procesal que las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, reconocen para obtener esa información es el descubrimiento de prueba. *Pueblo v. Arzuaga*, 160 D.P.R. 520, 530 (2003). Por tal razón, hemos resuelto que el derecho a descubrimiento de prueba es consustancial con el derecho de todo acusado a defenderse en un proceso criminal en su contra. *Pueblo v. Guzmán*, *supra*; *Pueblo v. Santa-Cruz*, *supra*.

Ahora bien, el derecho a descubrimiento de prueba a favor del acusado no es absoluto. *Pueblo v. Arzuaga*, *supra*; *Pueblo v. Arocho Soto*, *supra*; *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653, 668 (1985); *Pueblo v. Dones Arroyo*, 106 D.P.R. 303, 314 (1977). Este derecho está limitado por lo dispuesto en la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 95, la cual constituye una barrera estatutaria contra las llamadas "expediciones de pesca" en

los archivos del Ministerio Público. *Pueblo v. Arzuaga*, *supra*.

Según dispone el inciso (a) de la Regla 95 de Procedimiento Criminal, *supra*:

> Previa moción del acusado sometida en cualquier momento **después de haberse presentado la acusación o denuncia**, …el tribunal ordenará al Ministerio Fiscal que permita al acusado inspeccionar, copiar o fotocopiar el siguiente material o información que está en posesión, custodia o control del Ministerio Fiscal:
>
> (1) Cualquier declaración jurada que el Ministerio Fiscal tenga del acusado.
>
> (2) Cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para determinación de causa probable para el arresto o citación, en la vista preliminar, en el juicio o que fueron renunciados por el Ministerio Fiscal y los récords de convicciones criminales previas de éstos.
>
> **(3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.**
>
> (4) Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.
>
> (5) El récord de convicciones criminales previas del acusado.
>
> (6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar

> adecuadamente la defensa del acusado…
> (Énfasis suplido).

Del citado precepto legal, se puede apreciar que éste incluye un listado de aquella información en posesión del Ministerio Público que debe ser revelada a la defensa como parte del descubrimiento de prueba. De igual forma, también indica el momento en que se iniciará dicho descubrimiento.

Sobre este último aspecto se ha interpretado que la obligación del fiscal de descubrir prueba a la defensa se activa luego de que se haya sometido el pliego acusatorio, o sea, con la presentación de la denuncia en casos en que se impute la comisión de un delito menos grave o con la presentación de la acusación en casos en que se alegue que se ha cometido un delito grave. Véanse, *Pueblo v. Olmeda Zayas*, res. el 4 de junio de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 94, 2009 J.T.S. 97; E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, T. III, pág. 320. Según comenta el Profesor Chiesa, la expresión 'después de haberse presentado la acusación o denuncia' contenida en la Regla 95 de Procedimiento Criminal, *supra*, no puede interpretarse "en el sentido de que en caso de delito grave la obligación de descubrir se activa desde la presentación de la denuncia. De haber sido esa la intención legislativa, sólo habría que haber dicho 'después de haberse presentado la denuncia'". *Íd.*, pág. 321.

Por ende, conforme a la Regla 95 de Procedimiento Criminal, *supra*, cuando se trata de un delito grave, no es hasta que se presenta el pliego acusatorio que el acusado podrá exigir que se le provean los resultados de exámenes físicos o pruebas científicas que sean relevantes para preparar adecuadamente su defensa, o que vayan a ser utilizados por la Fiscalía en contra del acusado en el juicio.

Con esta norma en mente, debemos analizar si la Ley Núm. 13, *supra*, requiere que los protocolos de autopsia y demás análisis científicos efectuados u ordenados por el Instituto de Ciencias Forenses, sean entregados a los abogados de la defensa al mismo tiempo que le son entregados al Ministerio Público, aunque ello sea antes de que se presente el pliego acusatorio.

B

Con la aprobación de la Ley Núm. 13, *supra*, se creó el Instituto de Ciencias Forenses de Puerto Rico. Esta agencia se estableció con el propósito de salvaguardar la objetividad investigativa de las actividades delictivas y el encausamiento civilizado y justo de aquellos que transgreden la ley. Exposición de Motivos de la Ley Núm. 13, *supra*. Como parte de sus funciones, la Ley Núm. 13, *supra*, delegó en el Instituto de Ciencias Forenses la facultad de investigar la muerte de una persona que haya surgido como resultado de actos delictivos o que levanten sospecha de haberse cometido un delito. *Íd.,* 34 L.P.R.A.

sec. 3011. Para cumplir con esta función, la agencia llevará a cabo una autopsia mandatoria al occiso que permita determinar la causa y manera del fallecimiento. *Íd.*, 34 L.P.R.A. sec. 3012.[4] De igual forma, el Director del Instituto de Ciencias Forenses o cualquier juez instructor o fiscal podrá ordenar a cualquier médico en Puerto Rico, que esté cualificado para realizar una autopsia, a que proceda a efectuarla. *Íd.*, 34 L.P.R.A. sec. 3034. Por otra parte, además de los informes de autopsia, el Instituto de Ciencias Forenses está facultado para llevar a cabo todos aquellos exámenes en las áreas de las ciencias forenses y la criminología que sean necesarios. *Íd.*, 34 L.P.R.A. sec. 3005.

Una vez se practique la autopsia y demás análisis científicos, los resultados de estos estudios deben ser puestos a disposición inmediata de las agencias investigadoras, fiscales y jueces. Véase, Informe Conjunto de las Comisiones de lo Jurídico y Hacienda de la Ley Núm. 13, *supra*, pág. 30. También, estos se proveerán a los abogados de defensa que soliciten tales resultados. *Íd.* Sobre este particular, el Art. 20 de la Ley Núm. 13, *supra*, establece específicamente que:

> En todo caso en que se practicare la autopsia, los resultados de la misma deberán ser puestos en conocimiento del **juez instructor o fiscal con**

---

[4] La Ley Núm. 13 de 24 de julio de 1985, según enmendada, conocida como Ley del Instituto de Ciencias Forenses de Puerto Rico, 34 L.P.R.A. sec. 3001 *et seq.*, señala varias circunstancias específicas en las cuales será mandatorio el que el Instituto de Ciencias Forenses efectúe una autopsia y otras instancias en las cuales la autopsia se llevará a cabo a discreción del Patólogo Forense responsable de la investigación. Véase, *Íd.*, 34 L.P.R.A. secs. 3011-3012.

**toda premura**, así como cualquier otra información que pueda ayudar a éstos en el esclarecimiento de los hechos. **La misma información deberá proveerse a los abogados defensores** y a los familiares del occiso. (Énfasis suplido).

Además de este precepto, el Art. 27 de la Ley Núm. 13, *supra*, también regula la manera en que el Instituto de Ciencias Forenses hará la entrega de los informes de autopsia y de análisis científicos realizados. Para el momento en que la recurrida instó la Demanda en el caso de autos (22 de diciembre de 2008), el Art. 27 de la Ley Núm. 13, *supra*, disponía lo siguiente:

El Instituto expedirá a solicitud de parte interesada y mediante el pago de los aranceles y gastos que ello conlleve, copias certificadas de informes de autopsias y de análisis científicos efectuados por el personal profesional del Instituto. La exacta concordancia de dichas copias con los expedientes del Instituto deberá ser consignada en la certificación.

**No obstante, cuando los informes de autopsias y de análisis científicos solicitados estén relacionados con un caso cuya investigación criminal está en proceso, no se expedirán copias de dichos informes sin la aprobación del Secretario de Justicia, salvo que la solicitud provenga de un tribunal competente.** (Énfasis suplido).

Posteriormente, dicho artículo fue enmendado por la Ley Núm. 200 de 29 de diciembre de 2009 la cual introdujo una serie de cambios a la Ley Núm. 13, *supra*, con el propósito de exigir y lograr que las distintas divisiones del Instituto de Ciencias Forenses estén debidamente acreditadas. Como parte de estas modificaciones, el segundo párrafo del Art. 27 de la Ley Núm. 13, *supra*, ahora lee como sigue:

cuando los informes de autopsias y de análisis científicos solicitados de casos criminales **estén en proceso judicial**, no se expedirán copias de dichos informes sin la aprobación del Secretario de Justicia o Fiscal del caso, salvo que la solicitud provenga de un tribunal competente. (Énfasis suplido).

Como vemos, existen varias disposiciones en la Ley Núm. 13, *supra*, que comentan sobre la entrega de los informes de autopsia. No obstante, para determinar si estos preceptos exigen que el Director del Instituto de Ciencias Forenses o sus funcionarios entreguen a los abogados de defensa los informes de autopsia y demás análisis científicos en un caso criminal antes de la presentación del pliego acusatorio, debemos analizar los mencionados artículos tomando en cuenta las reglas de interpretación de las leyes.

C

En nuestro ordenamiento jurídico hemos establecido que al momento de que los tribunales descarguen su función de interpretar una ley, se deben considerar los propósitos perseguidos por la Asamblea Legislativa al aprobar el estatuto, de forma que éste se ajuste a la política pública que lo inspira. Véanse, *Claro TV y Junta Regl. Tel. v. One Link*, res. el 9 de junio de 2010, 179 D.P.R.___ (2010), 2010 T.S.P.R. 89; 2010 J.T.S. 98; *Irizarry v. J & J Cons. Prods. Co., Inc.*, 150 D.P.R. 155, 163 (2000) citando a *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408, 417 (1998). Nuestra obligación fundamental es darle efectividad a la intención legislativa con el propósito de que se logre el

fin perseguido por la ley. *Íd.* Véase, además, *Claro TV y Junta Regl. Tel. v. One Link*, *supra*.

Para llevar a cabo este ejercicio de interpretación, se debe acudir, en primer lugar, al texto de la ley. *Íd*. Si surge alguna ambigüedad del texto del estatuto, el tribunal debe asegurar el cumplimiento con los propósitos legislativos. *S.L.G. Rivera-Carrasquillo v. A.A.A.*, res. el 23 de octubre de 2009, 177 D.P.R.___ (2009), 2009 T.S.P.R. 162, 2009 J.T.S. 165. Empero, "cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. Por eso, si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa. *Rullán Rivera v. A.E.E.*, res. el 30 de junio de 2010, 179 D.P.R.___ (2010), 2010 T.S.P.R. 109; *Claro TV y Junta Regl. Tel. v. One Link*, *supra*; *López Nieves v. Méndez Torres*, res. el 27 de abril de 2010, 178 D.P.R.___ (2010), 2010 T.S.P.R. 64, 2010 J.T.S. 73; *Garriga Villanueva v. Mun. de San Juan*, res. el 17 de junio de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 103, 2009 J.T.S. 106; *Ortiz v. Municipio San Juan*, 167 D.P.R. 609, 617 (2006). En tal caso no se debe buscar más allá de la letra de su texto para encontrar cuál fue la voluntad del legislador. *Romero Barceló v. E.L.A.*, 169 D.P.R. 460, 477 (2006). Se debe descubrir y dar efecto a la intención expresada en la letra del estatuto. *Íd*.

Asimismo, en materia de hermenéutica estatutaria, las leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas en conjunto de suerte que lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro. Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18. Véanse, *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 595-596 (1989); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733, 738 (1989). Al interpretar este artículo hemos manifestado que una ley debe interpretarse tomando en consideración leyes o disposiciones *in pari materia* o complementarias que puedan ayudar a esclarecer cuál ha sido la verdadera intención legislativa. *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 750 (1992).

Del mismo modo, hemos sostenido que las leyes no han de ser interpretadas tomando aisladamente algunas de sus secciones, párrafos, u oraciones, sino que deben serlo tomando en consideración todo su contexto. *Semidey Ortiz y otros v. Consorcio Sur Central (ASIFAL)*, res. el 22 de diciembre de 2009, 177 D.P.R. ___ (2009), 2009 T.S.P.R. 184, 2010 J.T.S. 3; *Descartes v. Tribunal de Contribuciones*, 71 D.P.R. 248, 253 (1950).

Con el marco teórico esbozado procedemos a resolver la controversia aquí planteada.

III

En el caso de autos, el Tribunal de Apelaciones indicó que conforme al Art. 20 de la Ley Núm. 13, *supra*, los

protocolos de autopsia y demás análisis forenses que prepare u ordene el Instituto de Ciencias Forenses relacionados con un caso criminal deben ser entregados a la defensa tan pronto se hagan disponibles a la Fiscalía. Al así resolver incidió.

El Art. 20 de la Ley Núm. 13, *supra*, separa en dos (2) oraciones el deber del Instituto de Ciencias Forenses de entregar los referidos informes. Dicho precepto señala que los informes de autopsia y demás información que ayude a esclarecer los hechos que prepare u ordene el Instituto de Ciencias Forenses, deben ser puestos en conocimiento del juez instructor o fiscal con toda premura. Luego, en otra oración, el artículo indica que dichos informes también deben proveerse a los abogados defensores y a los familiares del occiso.

De un análisis de esta disposición, vemos que existe un deber ministerial del Director del Instituto de Ciencias Forenses y/o sus funcionarios de entregar a los abogados de defensa los protocolos de autopsia y demás análisis científicos que se efectúen. Por lo tanto, el acusado puede exigir que se le provean tales informes ya que tiene derecho a ellos conforme a lo dispuesto en el Art. 20 de la Ley Núm. 13, *supra*. No obstante, este precepto guarda silencio sobre el momento en que estos informes y resultados deben ser puestos a disposición de la defensa.

Del Art. 20 de la Ley Núm. 13, *supra*, no surge expresión alguna que pueda dar a entender que estos

informes deben ser entregados a la defensa antes de la etapa de vista preliminar. Aunque dicho precepto legal dispone que los protocolos de autopsia deben ser puestos a disposición del juez instructor o fiscal "con toda premura", no se expresa de la misma forma en cuanto a los abogados defensores.[5] Art. 20 de la Ley Núm. 13, *supra*.

Por su parte, el Art. 27 de la Ley Núm. 13, *supra*, le concede discreción al Secretario de Justicia o fiscal del caso para determinar si provee o no copia de los informes de autopsia y de los análisis científicos de casos criminales que estén en proceso judicial. Así, aunque este artículo hace alusión a la entrega de documentos en casos criminales que estén en proceso judicial, tampoco precisa el momento específico en que los abogados de la defensa tienen derecho a obtener copia de esos documentos.

Empero, la Regla 95 de Procedimiento Criminal, *supra*, dispone que el Fiscal tiene la obligación de descubrir prueba a favor del acusado luego de la presentación de la denuncia o acusación. Es decir, esta regla fija el momento en que los abogados de la defensa tendrán derecho a obtener, y el Ministerio Público la obligación de entregar, prueba a favor del acusado. Así, contrario a los Arts. 20 y 27 de la Ley Núm. 13, *supra*, esta regla establece cuándo la defensa tendrá derecho a exigirle al Ministerio Público que produzca la información requerida como parte del

---

[5] En vista de que la expresión 'con toda premura' se refiere únicamente a la manera en que se entregarán los informes de autopsia al juez o al fiscal y no en cuanto a la entrega de éstos a la defensa, no entraremos a evaluar el alcance de esa expresión.

descubrimiento de prueba. En ese sentido, se trata de una norma que complementa a la Ley Núm. 13, *supra*.

No cabe duda que la Regla 95 de Procedimiento Criminal, *supra*, está estrechamente relacionada a los Arts. 20 y 27 de la Ley Núm. 13, *supra*. Como es apreciable, todas estas disposiciones tienen en común su injerencia sobre el descubrimiento de prueba y el derecho que tiene la defensa de obtener información en casos criminales. La diferencia es que estos artículos se refieren a los informes de autopsia y análisis científico en casos de muertes de personas que hayan surgido como resultado de actos delictivos o que levanten sospecha de haberse cometido un delito, y la Regla 95 de Procedimiento Criminal, *supra*, gobierna el descubrimiento de prueba en todos los casos criminales de manera general. Por eso, una interpretación contextual e integrada de estas disposiciones, nos conduce a concluir que los informes de autopsia no tienen que ser provistos a la defensa al mismo tiempo que se le entregan a la Fiscalía.

Ciertamente, el Art. 20 de la Ley Núm. 13, *supra*, le reconoce a la defensa obtener copia de los informes de autopsia y análisis científicos realizados por el Instituto de Ciencias Forenses. Al mismo tiempo, el Art. 27 de esta ley establece que esos documentos se le podrán conceder a la defensa por el fiscal o el Secretario de Justicia de manera discrecional, en casos criminales que estén en proceso judicial. Ahora bien, ninguna de estas

disposiciones establece el momento preciso en el que la defensa tendrá derecho a que el Ministerio Público le produzca esos documentos. De ahí, que tengamos que acudir a la Regla 95 de Procedimiento Criminal, *supra*, para aclarar esa omisión. Por lo tanto, al interpretar conjuntamente los Arts. 20 y 27 de la Ley Núm. 13, *supra*, con la Regla 95 de Procedimiento Criminal, *supra*, colegimos que la obligación del Fiscal de descubrir los informes de autopsia al acusado se activará luego de la presentación de la denuncia o acusación, según la naturaleza de los cargos.

Creemos que si el legislador hubiese tenido la intención de que los protocolos de autopsia se pusieran a disposición de la defensa en etapas anteriores a la presentación del pliego acusatorio, así lo hubiese indicado expresamente en la Ley Núm. 13, *supra*, o en cualquier otra ley que hubiese aprobado con tal propósito. Por eso, el interpretar los Arts. 20 y 27 de esta ley para permitirle al acusado el descubrimiento de los protocolos de autopsia en una etapa tan temprana del proceso, conllevaría proveer algo que el legislador no intentó proveer. Ello equivaldría a inmiscuirnos indebidamente en las funciones de la Asamblea Legislativa.

En consecuencia, una persona acusada de haber cometido un delito en el que alegadamente le ocasionó la muerte a la presunta víctima, como regla general, tendrá que esperar a que el Ministerio Público presente el pliego acusatorio para poder solicitar la producción de los informes de

autopsia y demás pruebas científicas que se preparen con relación a esa muerte.[6] Esto es así, aunque los informes se pongan a disposición del Ministerio Público antes de que se presente el pliego acusatorio.

En resumen, resolvemos que un acusado de haber cometido un delito grave en el que alegadamente haya ocasionado la muerte a una persona, no tiene derecho a recibir los protocolos de autopsia ni las demás pruebas científicas que se hayan efectuado con relación al supuesto delito, antes de que el Ministerio Público presente la correspondiente acusación. Por ende, la recurrida no tiene derecho a que se le provean los informes de autopsia y las otras pruebas científicas que efectúe u ordene el Instituto de Ciencias Forenses hasta luego de que el Ministerio Público presente el pliego acusatorio correspondiente,

---

[6] Lo anterior no contraviene la facultad discrecional del Secretario de Justicia o del fiscal de facilitar a la defensa copia de los informes de autopsia y de los análisis científicos relacionados con casos criminales antes de que se presente la correspondiente acusación o denuncia. Art. 27 de la Ley Núm. 13, *supra*. Es decir, aunque el acusado no tiene derecho a que los informes se le provean antes de que se presente la denuncia o acusación correspondiente, nada impide que el Ministerio Público provea tales resultados de forma voluntaria en etapas anteriores a la presentación del pliego acusatorio si así desea hacerlo. Por lo tanto, aunque en el caso específico del acusado, la obligación de proveer los mencionados informes y análisis se activa luego de la presentación del pliego acusatorio, el Secretario de Justicia o fiscal del caso podrá autorizar la entrega de los protocolos de autopsia y de los resultados de exámenes científicos en otras fases del proceso judicial como lo son las etapas anteriores a la presentación del pliego acusatorio.

Por otra parte, lo expuesto tampoco modifica de forma alguna la obligación del Ministerio Público de revelar al acusado prueba exculpatoria, si es que de los informes se desprende tal evidencia. Este deber surge "sin necesidad de una previa solicitud por parte de la defensa y sin importar si las Reglas de Procedimiento Criminal proveen o no para tal descubrimiento en la etapa específica de los procedimientos en que se encuentren". *Pueblo v. Arzuaga*, 160 D.P.R. 520, 539 (2003).

aunque estos resultados se hayan puesto a disposición de Fiscalía antes de esa etapa.

IV

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca la Sentencia recurrida emitida por el Tribunal de Apelaciones. Por ende, se reinstala la Sentencia emitida por el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sociedad para la Asistencia
Legal, Inc.                                                    *Certiorari*

    Recurrida

      v.                                              CC-2010-365

Instituto de Ciencias Forenses
de Puerto Rico, *et als*.

    Peticionarios


SENTENCIA

En San Juan, Puerto Rico, a 16 de septiembre de 2010.

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca la Sentencia recurrida emitida por el Tribunal de Apelaciones. Por ende, se reinstala la Sentencia emitida por el Tribunal de Primera Instancia.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita. El Juez Asociado señor Rivera García no interviene.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo