ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **GEORGINA CORTÉS QUIJANO**<br>APELANTE(S)-RECURRENTE(S)<br><br>V.<br><br>**JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO**<br>APELADA(S)-RECURRIDA(S) | **KLRA202200428** | ***Revisión de Decisión Administrativa***<br>procedente de la Junta de Retiro del Gobierno de Puerto Rico<br><br>Caso Núm.<br>**2021-0052**<br><br>Sobre:<br>Pensión por viudez |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

Barresi Ramos, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 28 de febrero de 2023.

La señora **Georgina Cortés Quijano** (señora **Cortés Quijano**) comparece ante este Tribunal de Apelaciones mediante *Recurso de Revisión de Decisión Administrativa* incoado el 8 de agosto de 2022. En su escrito, nos solicita que revisemos la *Resolución* decretada el 18 de mayo de 2022 por la **Junta de Retiro del Gobierno de Puerto Rico (Junta de Retiro)**. En dicho dictamen, el foro administrativo confirmó la decisión emitida el 6 de agosto de 2021 por la **Junta de Retiro** en la cual se determinó no considerar favorablemente su petitorio de pensión por viudez, ello tras concluir que no satisfizo el requisito estatutario de haber estado casado(a) por un periodo no menor de diez (10) años al momento del fallecimiento.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

# - I -

El 17 de junio de 2021, la señora **Cortés Quijano** presentó una *Solicitud de Pensión para Viuda(o) y Beneficiarios* ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Administración).[1] Según requerido por el formulario de la Administración, la señora **Cortés Quijano** informó que contrajo matrimonio el 10 de febrero de 2012 con el pensionado Pedro Vargas Fontánez, y este falleció el 13 de octubre de 2020.

El 6 de agosto de 2021, la **Junta de Retiro** emitió misiva conteniendo su determinación sobre denegación del beneficio de pensión por viudez, por la razón de que no se satisfizo el requisito de haber estado casada por un periodo no menor de diez (10) años con el pensionado fallecido, según establecido en la Ley Núm. 105-1968, *infra*.[2]

En desacuerdo con esta decisión, el 25 de agosto de 2021, la señora **Cortés Quijano** presentó una *Reconsideración* en la cual argumentó que procedía la aprobación de los beneficios, dado que desde el año 2007 hasta el momento del matrimonio- 10 de febrero de 2012-, mantuvo una relación de convivencia similar al matrimonio (*more uxorio*) con el señor Vargas Fontánez.[3] El 3 de septiembre de 2021, el foro administrativo reafirmó su decisión.[4]

Ante esta situación, el 6 de octubre de 2021, la señora **Cortés Quijano** presentó una *Apelación* ante la **Junta de Retiro** y, tras varios incidentes procesales, 27 de abril de 2022, se celebró una audiencia administrativa.[5] Finalmente, el 18 de mayo de 2022, la **Junta de Retiro** pronunció la *Resolución* impugnada mediante la cual confirmó la denegatoria de

---

[1] Véase Apéndice del *Recurso de Revisión de Decisión Administrativa*, pág. 28.

[2] Véase Carta fechada 6 de agosto de 2021, Apéndice del *Recurso de Revisión de Decisión Administrativa*, pág. 31.

[3] Véase Apéndice del *Recurso de Revisión de Decisión Administrativa*, pág. 34.

[4] Véase Carta de 3 de septiembre de 2021, Apéndice del *Recurso de Revisión de Decisión Administrativa*, pág. 39.

[5] Véase Apéndice del *Recurso de Revisión de Decisión Administrativa*, pág. 42.

beneficios.[6]

Inconforme con lo resuelto, el 23 de junio de 2022 la señora **Cortés Quijano** presentó una *Solicitud de Reconsideración y Determinaciones de Hecho y Derecho Adicionales.*[7] La **Junta de Retiro** no actuó sobre la solicitud dentro del término provisto para ello, por lo que se entiende rechazado de plano.

El 8 de agosto de 2022, la señora **Cortés Quijano** acudió ante este Tribunal de Apelaciones mediante *Recurso de Revisión de Decisión Administrativa*, y señaló los siguientes errores:

> Erró la Honorable Junta de Retiro al no atender la controversia sobre la obstaculización y violación del debido proceso de ley relacionado con el hecho de que no se le permitió a la parte apelante-recurrente presentar inicialmente ante la agencia la evidencia sobre su relación de convivencia marital (more uxorio) con su difunto esposo.
>
> Erró la Honorable Junta en su apreciación de la prueba oral presentada durante la vista administrativa la cual fue suficiente para demostrar la relación de convivencia marital (more uxorio) de la apelante-recurrente con su difunto esposo.
>
> Erró la Honorable Junta al no realizar determinaciones de hechos y derecho adicionales que le fueron solicitadas por la parte apelante-recurrente y que son fundamentales para la adecuada resolución del caso de epígrafe y para determinar los derechos de la viuda en este caso.
>
> Erró la Honorable Junta en su interpretación del término "casados" en este caso y en el análisis del derecho aplicable al denegar los beneficios solicitados por la apelante-recurrente.
>
> Erró la Honorable Junta al aplicar las disposiciones de la Ley Núm. 3 de 4 de abril de 2013 al caso de autos.

Ese mismo día, la señora **Cortés Quijano** presentó *Solicitud de Reproducción de la Prueba Oral (Regla 66)* reclamando que ordenáramos la reproducción de la prueba oral vertida en la audiencia administrativa. El 11 de agosto de 2022, decretamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de treinta (30) días para presentar alegato(s) en oposición al recurso, así como dispusimos el trámite concerniente a la

---

[6] Este dictamen fue notificado y archivado en autos el 2 de junio de 2022. Véase Apéndice del *Recurso de Revisión de Decisión Administrativa*, pág. 1.

[7] Véase Apéndice del *Recurso de Revisión de Decisión Administrativa*, pág. 15.

reproducción de la transcripción de la prueba oral. Concedida una prórroga, el 13 de octubre de 2022, la **Junta de Retiro** presentó su *Alegato de la Parte Recurrida*.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, exponemos las normas de derecho pertinentes a la controversia planteada a los fines de adjudicar.

- II -

- A -

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de normas mínimas para regir los procesos de adjudicación y reglamentación en la administración pública.[8] Su sección 4.1 instituye la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[9]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[10] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la razonabilidad de la actuación de la agencia.[11] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[12]

No obstante, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que sus conclusiones e interpretaciones merecen gran consideración y respeto.[13] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son

---

[8] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA §§ 9601-9713. *Saldaña Egozcue v. Junta,* 201 DPR 615, 621 (2018).

[9] 3 LPRA § 9671.

[10] *Torres Acosta v. Junta Examinadora,* 161 DPR 696, 707 (2004).

[11] *Otero Mercado v. Toyota,* 163 DPR 716, 727 (2005).

[12] *Torres Acosta v. Junta Examinadora, supra,* pág. 708.

[13] *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 891 (2008); *Murphy Bernabe v. Tribunal Superior,* 103 DPR 692, 699 (1975).

especialistas— y cuestiones propias de la discreción o pericia administrativa.[14]

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a decidir lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[15]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad. [16] *Evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión. [17] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción. [18] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[19] A esto se le conoce como la norma de la *evidencia sustancial,* con lo cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[20] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[21]

De otro lado, las conclusiones de derecho de la agencia son revisables

---

[14] *Adorno Quiles v. Hernández,* 126 DPR 191, 195 (1990).
[15] Sección 4.5 de la LPAU, 3 LPRA § 9675; *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016).
[16] *Asociación Vecinos del Hospital San Jorge v. United Medical Corp.,* 150 DPR 70, 75 (2000).
[17] *Otero Mercado v. Toyota, supra,* pág. 728.
[18] *Pacheco Torres v. Estancias de Yauco, SE,* 160 DPR 409, 431 (2003).
[19] *Gutiérrez Vázquez v. Víctor Hernández,* 172 DPR 232, 244 (2007).
[20] *Pacheco Torres v. Estancias de Yauco, SE,, supra,* pág. 432.
[21] *Íd.*

en todos sus aspectos, sin sujeción a norma o criterio alguno.[22] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran.[23] Ante ello, "[a]un en casos dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial".[24]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación. Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[25]

**- B -**

La *Ley del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico* provee los beneficios de jubilación a los empleados del gobierno y, en determinadas circunstancias, extiende beneficios al cónyuge sobreviviente, a las personas que este haya designado como beneficiarios o a los herederos.[26] Mediante la Ley Núm. 105 de 28 de junio de 1969, según enmendada, se ampliaron los beneficios de la *Ley de Retiro* para conceder una pensión al *cónyuge supérstite* y a los hijos menores o incapacitados sobreviviente de un participante del Sistema de Retiro.[27] En lo pertinente, esta ley dispone lo siguiente (énfasis suplido):

> (a) Al fallecer un participante del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades y/ del Sistema de Retiro de la Judicatura de Puerto Rico mientras estuviere recibiendo una anualidad por retiro o por incapacidad de dicho Sistema, el cónyuge supérstite e hijos menores o física y/mentalmente incapacitados tendrán derecho a una pensión que se determinará de acuerdo a lo dispuesto en esta sección.

---

[22] *Rebollo v. Yiyi Motos,* 161 DPR 69, 77 (2004).
[23] *Torres Santiago v. Departamento de Justicia,* 181 DPR 969, 1002 (2011).
[24] *Id.*
[25] *Junta de Planificación v. Cordero Badillo,* 177 DPR 177, 187 (2009).
[26] Conocida como Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 LPRA § 761 y siguientes, (Ley de Retiro). Véanse Artículos 2-111 a 1-113 de la Ley de Retiro, 3 LPRA §§ 771-773.
[27] 3 LPRA § 788a.

[...]

(b) [...]

(c) [...]

(d) [...]

(e) Si el pensionado al momento de fallecer estuviere cubierto por el Título II de la Ley Federal de Seguridad Social las personas mencionadas en el inciso (a) de esta sección, en lugar de lo dispuesto en el inciso (b) de esta sección, recibirán dividido por partes iguales el cincuenta por ciento (50%) de la anualidad que recibía el pensionado al momento de su muerte. El cónyuge supérstite del pensionado recibirá la pensión dispuesta en este inciso al cumplir sesenta (60) años de edad. **Disponiéndose, además, que el cónyuge supérstite deberá haber estado casado por no menos de diez (10) años con el pensionado fallecido al momento de su fallecimiento.**

[...]

Por su parte, el Reglamento Núm. 4930 de 26 de mayo de 1993, complementa en su Regla 40 las disposiciones sobre la pensión al *cónyuge supérstite* e hijos de los pensionados bajo la Ley Núm. 105-1969, *supra*.[28] En lo aquí pertinente, la Regla 40 lee (énfasis suplido):

40.1- Al fallecer un pensionado del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, el cónyuge supérstite y los hijos menores o física o mentalmente incapacitados, tendrán derecho a una pensión al amparo de la Ley Núm. 105 de 28 de junio de 1969, según enmendada.

40.2- Para tener derecho a recibir una pensión al amparo de la Ley Núm. 105, *supra,* será requisito que:

(a) el cónyuge supérstite se mantenga en estado de viudez;

(b) los hijos sean menores de edad o estén física o mentalmente incapacitados.

40.3- Si el pensionado al momento de fallecer estuviere cubierto por el Título II de la Ley de Seguridad Social, el cónyuge supérstite e hijos menores o física o mentalmente incapacitados, recibirán por partes iguales el treinta por ciento (30%) de la anualidad que recibía el pensionado al momento de su muerte. **Para tener derecho a la anualidad el cónyuge supérstite debe haber estado casado por no menos de diez (10) años con el pensionado fallecido y recibirá la anualidad al cumplir la edad de sesenta (60) años.**

Finalmente, la *Ley de Retiro, supra,* define a un *cónyuge supérstite* como "la persona que esté **casada** con el participante al momento de la

---

[28] Conocido como el Reglamento General del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades para la Concesión de Pensiones, Beneficios y Derechos a los Empleados del Gobierno de Puerto y sus Instrumentalidades.

separación del servicio y que sobreviva al participante".[29]

### - C -

Al descargar nuestra función de interpretar una ley, los tribunales debemos considerar los propósitos que persiguió la Asamblea Legislativa al aprobar el estatuto, para así imprimirle efectividad a la política pública que lo inspira.[30] En este ejercicio de interpretación estamos obligados a acudir, en primer término, al texto de la ley.[31] Ello, pues "si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa".[32] Este principio de hermenéutica estatutaria se encuentra codificado en el Artículo 19 del Código Civil de 2020, el cual dispone que "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".[33] De modo que, solamente cuando encontramos ambigüedad en el texto de la ley debemos recurrir a otras técnicas de interpretación para asegurar el cumplimiento de los propósitos legislativos.[34] En ausencia de ambigüedad y confusión, no debe buscarse más allá de la letra de su texto para encontrar cuál fue la voluntad del legislador.[35]

### - III -

Un argumento hilvana los varios señalamientos de error que la señora **Cortés Quijano** elabora en su recurso; este es, que el foro administrativo realizó una interpretación irrazonable del término *cónyuge supérstite*

---

[29] 3 LPRA § 763.
[30] *Sociedad para la Asistencia Legal, Inc., v. Instituto de Ciencias Forenses de PR,* 179 DPR 849, 862 (2010).
[31] *Id.*
[32] *Cruz Parrilla v. Departamento de la Vivienda,* 184 DPR 393, 404 (2012).
[33] 31 LPRA § 5341.
[34] *Sociedad para la Asistencia Legal, Inc., v. Instituto de Ciencias Forenses de PR, supra,* pág. 862. Véanse, por ejemplo, los Artículos 21 y 21 del Código Civil de 2020, 31 LPRA §§ 5342 y 5343:

> Artículo 20. - Sentido de la ley.
> Para descubrir el verdadero sentido de una ley cuando sus expresiones son ambiguas, se considerará su razón y su espíritu, mediante la atención a los objetivos del legislador, a la causa o el motivo para dictarla.

> Artículo 21. - Aplicación analógica.
> La aplicación analógica procede cuando las leyes no contemplan un caso específico, pero se refieren a la misma materia u objeto, entre los que se aprecia identidad de razón. En tal caso, deberán ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro.

[35] *Id.*

contemplado en la Ley Núm. 105-1969. La señora **Cortés Quijano** sostiene que la **Junta de Retiro** debió interpretar dicho término liberalmente, y hacerlo extensivo a la relación de convivencia *more uxorio* que, desde el año 2007 al 2012, mantuvo con el señor Vargas Fontánez. Este periodo, sumado a los ocho (8) años que estuvo casada con el pensionado, argumenta la señora **Cortés Quijano**, serían suficientes para satisfacer el requisito de diez (10) años de matrimonio al momento del fallecimiento.

Reseñamos que la Ley Núm. 105-1969, *supra,* concede el beneficio de una pensión por viudez al *cónyuge supérstite* de un participante que hubiera estado recibiendo una anualidad por retiro al momento de su muerte, siempre que se cumplan dos (2) requisitos básicos: (1) el *cónyuge supérstite* haya cumplido sesenta (60) años, y (2) haya estado casado con el pensionado fallecido por no menos de diez (10) años. En la *Resolución* recurrida, el foro administrativo analizó las disposiciones pertinentes de la Ley Núm. 105-1969, *supra,* y la Ley Núm. 447-1951, *supra,* concluyendo que estas distinguen entre los participantes casados y los no casados para la concesión de beneficios.[36] Asimismo, coligió que para ser *cónyuge supérstite* la persona tiene que haber contraído matrimonio.[37]

Recordemos que aun cuando las conclusiones de derecho de una agencia son revisables en todos sus aspectos, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran; por lo que, aun ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[38]

La Ley Núm. 105-1969, *supra,* expresa que el derecho a la pensión está reservado al *cónyuge supérstite,* quien "deberá haber estado casado por no menos de diez (10) años con el pensionado fallecido al momento de su

---

[36] Véase *Resolución* de 18 de mayo de 2022, apéndice del recurso, a la pág. 10.
[37] *Id.,* a la pág. 11.
[38] *Rebollo v. Yiyi Motos, supra,* pág. 77 (2004); *Torres Santiago v. Departamento de Justicia,* 181 DPR 969, 1002 (2011).

fallecimiento". A su vez, la *Ley de Retiro* prescribe que *cónyuge supérstite* "[s]ignificará la persona que esté casada con el participante al momento de la separación del servicio y que sobreviva al participante". Ambos textos son claros, y susceptibles de ser entendidos en un único sentido. Esto es, el concepto de *cónyuge supérstite* que contempla el estatuto no abarca el tipo de relación de convivencia que, desde el año 2007 al 2012, mantuvo la señora **Cortés Quijano** con el pensionado fallecido, sino que se refiere al matrimonio según definido por nuestro Código Civil, el cual precisa como requisito para su validez que se celebre y solemnice con arreglo a las prescripciones de la ley. Esta fue la interpretación que realizó la **Junta de Retiro**, y no encontramos motivos para ignorar la doctrina de deferencia sustancial que debemos a una interpretación razonable de un organismo administrativo sobre las leyes que le rigen.

Desde un inicio, la señora **Cortés Quijano** proveyó a la Administración de los Sistemas de Retiro todos los datos pertinentes para que la agencia pudiera tomar una determinación conforme a derecho. De las certificaciones de matrimonio y defunción incluidos con su solicitud de pensión surge que el 10 de febrero de 2012, contrajo matrimonio con el señor Vargas Fontánez, y este falleció el 13 de octubre de 2020. En total, la señora **Cortés Quijano** estuvo casada con el pensionado un total de ocho (8) años, ocho (8) meses y tres (3) días. La prueba documental y testifical que aportó la señora **Cortés Quijano** durante la audiencia administrativa reafirma este hecho fundamental. Es evidente, pues, que en el caso de la señora **Cortés Quijano no** se satisface el criterio básico de haber estado casada con el pensionado fallecido por un término no menor de diez (10) años, por lo que no tiene derecho a percibir la pensión por viudez.

Por último, es preciso apuntar que no se cometieron los otros errores señalados por la señora **Cortés Quijano**. Durante la audiencia administrativa, la señora **Cortés Quijano** tuvo la oportunidad de presentar evidencia documental adicional que no pudo presentar al momento de la

solicitud, además del testimonio propio y de una testigo adicional. Con ello se salvaguardó su derecho a un debido proceso de ley. De otro lado, el foro administrativo no tenía la obligación de acoger una solicitud de reconsideración y/o determinaciones de hecho y conclusiones de derecho adicionales. Aun en los casos civiles ante el Tribunal General de Justicia no existe tal deber, pues el juzgador posee discreción para denegar el petitorio, el cual solo procede para corregir errores manifiestos de hechos o de derecho.[39] En conclusión, la **Junta de Retiro** no estaba obligada a realizar determinaciones de hechos adicionales, máxime cuando las determinaciones de hechos propuestas por la señora **Cortés Quijano** no pueden tener efecto sobre la solicitud de pensión por viudez a la luz del derecho aplicable. Finalmente, por el resultado al que llegamos, es innecesario discutir el quinto señalamiento de error.

## - IV -

Por los fundamentos antes expuestos, confirmamos la *Resolución* intimada el 18 de mayo de 2022 por la **Junta de Retiro**.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[39] *Carattini v. Collazo Systems Analysis, Inc.,* 158 DPR 345, 357 (2003).