

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael Domingo Pagán Santiago<br><br>    Recurrido<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del Gobierno del ELA de Puerto Rico y la Judicatura<br><br>    Peticionaria | |
| Ana Matilde Ortiz Rivera<br><br>    Recurrida<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del Gobierno del ELA de Puerto Rico y la Judicatura<br><br>    Peticionaria | Certiorari<br><br>2012 TSPR 68<br><br>185 DPR \_\_\_\_ |

Número del Caso: CC-2011-500
cons.
CC-2011-507


Fecha: 10 de abril de 2012


Tribunal de Apelaciones:

       Región Judicial de San Juan Panel III


Oficina de la Procuradora General:

       Lcda. Irene Soroeta Kodesh
       Procuradora General

       Lcda. María Astrid Hernández Martín
       Procuradora General Auxiliar

Abogado de la Parte Recurrida:

       Lcdo. Raúl Caballero Meléndez

Materia: Seguros – Revisión Administrativa Procedente de la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael Domingo Pagán Santiago<br><br>    Recurrido<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del Gobierno del ELA de Puerto Rico y la Judicatura<br><br>    Peticionaria | CC-2011-0500<br><br>cons.<br><br>CC-2011-0507 | Certiorari |
| Ana Matilde Ortiz Rivera<br><br>    Recurrida<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del Gobierno del ELA de Puerto Rico y la Judicatura<br><br>    Peticionaria | | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 10 de abril de 2012.

Los recursos de autos nos permiten examinar si un servidor público jubilado con una anualidad por retiro de la Ley 174-2000, según enmendada, conocida como Ley de Retiro Temprano de los Empleados de Gobierno de Puerto Rico, 3 L.P.R.A. sec. 5018 *et seq.*, es acreedor del aumento de tres por ciento (3%) en su anualidad concedido

en la Ley 35-2007, 3 L.P.R.A. sec. 766(nt) (Supl. 2009).[1]
Resolvemos, *a priori*, que los recurridos no tenían derecho
a cobrar el referido aumento.

I

La Administración de los Sistemas de Retiro de los
Empleados del Gobierno de Puerto Rico (en adelante
Administración de Retiro o Sistema de Retiro) acude ante
nos mediante los recursos CC-2011-500 y CC-2011-507.

En ambos casos consolidados, la Administración de
Retiro, a raíz de un proceso de auditoría, determinó que
el pago que hiciera a los recurridos en virtud de la Ley
Núm. 35, *supra*, fue hecho por error y, por tanto, procedió
a cobrar las cantidades pagadas indebidamente. A
continuación, exponemos los hechos específicos de cada uno
de los recursos que generaron las controversias de autos.

A.

CC-2011-0500

Rafael Domingo Pagán Santiago (en adelante señor Pagán
Santiago o recurrido), era Director de Comercio Exterior
en la Compañía de Comercio y Exportaciones cuando se
retiró. El recurrido se acogió a una pensión de retiro
temprano conforme a la Ley Núm. 174, *supra*. El señor Pagán
Santiago contaba con veintiséis punto setenta y cinco
(26.75) años de servicio acreditados al Sistema de Retiro

---

[1] Las letras "nt" después del número de la sección, indican que la ley se cita en una nota bajo dicha sección.

y con cincuenta y cinco (55) años de edad; esto calculado al 31 de diciembre de 2000.

En la misma carta en que se le notificó la aprobación de la pensión dispuesta en la Ley Núm. 174, *supra*, -carta fechada al 1 de mayo de 2001- se le informó al recurrido que

> [l]os pensionados por Retiro Temprano podr[ían] prestar servicios, sin que se v[iera] afectada su pensión, **una vez cumpla[n] con los requisitos de la Ley 447 del 15 de mayo de 1951,** según enmendada, conocida como la Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico [en adelante Ley del Sistema de Retiro o Ley 447]. Conforme a nuestros registros **usted completará los mismos el 1 de abril de 2004.** CC-2011-500, Resolución de la Junta de Síndicos de 28 de junio de 2010. (Énfasis suplido).

Así las cosas, el 24 de abril de 2007 se aprobó la Ley Núm. 35, *supra*, estableciendo un aumento de tres por ciento (3%) a las pensiones recibidas al amparo de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico. Desde el 1 de julio de 2007 hasta el 15 de julio de 2008, el señor Pagán Santiago recibió los beneficios legislados por la Ley Núm. 35, *supra*.

Sin embargo, el 16 de septiembre de 2008, la Administración de Retiro le notificó al recurrido que el beneficio legislado en la Ley Núm. 35, *supra*, le había sido otorgado por error. Indicó la Administración de Retiro

> [s]egún auditoría realizada en noviembre de 2007, se le otorgó el aumento de la Ley 35/2007 (3%) indebidamente, ya que pasó a la nómina regular de pensionados el 1 de abril de 2004. Para tener el derecho a dicho aumento, debía estar en la nómina en o antes del 1 de enero de 2004.

Además, mediante dicha misiva, la Administración de Retiro procedió a cobrarle al recurrido la cantidad pagada indebidamente ascendente a mil ciento cincuenta dólares con quince centavos ($1,150.15).

El señor Pagán Santiago apeló a la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante Junta de Síndicos) para que revocara la decisión de la Administración de Retiro. Alegó que cumplía con los requisitos dispuestos en la Ley Núm. 35, *supra*, y que por tanto era acreedor del aumento de tres por ciento (3%). En la alternativa, alegó que la agencia cometió un error de Derecho pues estaba reinterpretando la Ley Núm. 35, *supra*, y por tanto, la Administración de Retiro no podía cobrar las partidas otorgadas indebidamente.

No obstante las alegaciones del recurrido, la Junta de Síndicos confirmó la decisión de la Administración de Retiro y resolvió que no tenía derecho al referido aumento. Además, dictaminó que el aumento le fue otorgado por error porque el sistema de contabilidad de la agencia no diferencia entre las personas acogidas a los beneficios del retiro temprano, Ley Núm. 174, *supra*, y los acogidos a

la Ley Núm. 447, *supra*. Por tal razón, la Junta de Síndicos concluyó que el pago en exceso fue debido a un error de trámite y de contabilidad y confirmó también la acción de la Administración de Retiro de cobrar la cantidad pagada indebidamente.

Sometida la controversia ante el Tribunal de Apelaciones, el foro *a quo* revocó la decisión de la Junta de Síndicos. En lo pertinente, determinó que las leyes en cuestión eran estatutos reparadores que debían ser interpretados de manera liberal para cumplir con el beneficio social que pretendió otorgar el legislador. Además, resolvió que aunque la Ley Núm. 35, *supra*, contenía excepciones a su aplicación, los participantes de la Ley Núm. 174, *supra*, no se encontraban excluidos expresamente. Con ello en mente, concluyó que el señor Pagán Santiago era acreedor del aumento de tres por ciento (3%) pues cumplía con todos los requisitos de la Ley Núm. 35, *supra*.

### B.

### CC-2011-0507

Por otra parte, en el recurso CC-2011-0507, se alegan unos hechos y controversias muy similares a las del recurso anterior.

Ana Matilde Ortiz Rivera (en adelante la señora Ortiz Rivera o recurrida) trabajaba como Auxiliar Administrativo II en la División de Compras y Suministros del Cuerpo de

Bomberos de Puerto Rico. La señora Ortiz Rivera tenía acreditados veinticinco punto setenta y cinco (25.75) años al Sistema de Retiro y cuarenta y cuatro (44) años de edad, esto calculado al 30 de abril de 2001. La recurrida solicitó acogerse a los beneficios de pensión por retiro temprano de la Ley Núm. 174, *supra*. Posteriormente, el 1 de mayo de 2001, se le notificó mediante carta que su pensión por retiro temprano había sido aprobada. Además, se le notificó que

> [l]os pensionados por Retiro Temprano podr[ían] prestar servicios, sin que se v[iera] afectada su pensión, **una vez cumpla con los requisitos de la Ley 447 del 15 de mayo de 1951,** según enmendada. Conforme a nuestros registros **usted completará los mismos el 1 de octubre de 2005.** CC-2011-507, Resolución de la Junta de Síndicos de 14 de septiembre de 2010. (Énfasis suplido).

Así las cosas, y mientras recibía la pensión según dispuesta en la Ley Núm. 174, *supra*, desde 1 de julio de 2007 hasta el 15 de julio de 2008, la señora Ortiz Rivera recibió el aumento de tres por ciento (3%) en su pensión dispuesto en la Ley Núm. 35, *supra*. Sin embargo, la Administración de Retiro le informó, mediante carta, que a raíz de una auditoría realizada en julio de 2008, descubrieron que se le había otorgado indebidamente el aumento de la Ley Núm. 35, *supra*. Además, procedió a cobrarle la cantidad pagada indebidamente ascendiente a quinientos setenta y siete dólares con cuarenta y cuatro centavos ($577.44).

La señora Ortiz Rivera apeló la decisión de la Administración de Retiro a la Junta de Síndicos. En lo pertinente, la Junta de Síndicos concluyó que la recurrida no era acreedora del aumento legislado en la Ley Núm. 35, *supra*, pues al 1 de enero de 2004, aún cobraba su pensión bajo la Ley Núm. 174, *supra*; mientras que la Ley Núm. 35, *supra,* requería que el pensionado cobrara la pensión bajo la Ley Núm. 447, *supra*, en o antes del 1 de enero de 2004. Además, la Junta de Síndicos determinó que la señora Rivera Ortiz debía pagar a la Administración de Retiro las partidas del aumento que fueron pagadas indebidamente.

Inconforme con el resultado, la señora Ortiz Rivera, acudió al Tribunal de Apelaciones para la revisión judicial de la decisión de la Junta de Síndicos. En síntesis, el tribunal *a quo* resolvió que la interpretación que la Junta de Síndicos hiciera sobre la Ley Núm. 35, *supra*, era insostenible pues no tenía fundamento en la intención legislativa. A su vez, determinó que los pensionados acogidos al retiro temprano de la Ley Núm. 174, *supra*, no fueron expresamente excluidos de la aplicación de la Ley Núm. 35, *supra*. En fin, el foro apelativo intermedio entendió que la recurrida era acreedora del aumento en su pensión.

Inconforme con la determinación del Tribunal de Apelaciones, la Administración de Retiro presentó dos (2)

recursos de *Certiorari* ante nos. Dichos recursos fueron consolidados y plantean el siguiente error:

> Erró el Tribunal de Apelaciones al revocar la Resolución de la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura confirmando la determinación del Administrador de los Sistemas de Retiro de excluir al Señor Rafael Domingo Pagán Santiago y la Señora Ana Matilde Ortiz Rivera del aumento del 3% concedido por la Ley Núm. 35 del 24 de abril de 2007.

Examinados ambos recursos, el 21 de octubre le ordenamos a los recurridos que mostraran causa por la cual no debíamos expedir. La señora Ortiz Rivera nunca compareció ante nos. Con el beneficio de la comparecencia del señor Pagán Santiago, procedemos a resolver los recursos de autos conforme intimado.

## II

### A.

La Ley Núm. 447, *supra*, creó el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico. Esta legislación se caracteriza por ser una general y abarcadora que provee beneficios y anualidades de retiro para empleados del Gobierno estatal y sus instrumentalidades, entre otros. Véase *Landán v. Torres Braschi*, 82 D.P.R. 479, 480 esc.1 (1961). La participación en el Sistema de Retiro es, como regla general, obligatoria.[2] 3 L.P.R.A. sec. 764; *Calderón v. Adm. de los*

---

[2] "El ingreso al Sistema de Retiro es discrecional únicamente para los Secretarios del Gobierno, los ayudantes del Gobernador de Puerto Rico,

*Sistemas de Retiro*, 129 D.P.R. 1020, 1031-1032 (1992). El denominado Sistema de Retiro se considera un *fideicomiso*, cuyos fondos deben utilizarse "en provecho de los miembros participantes de su matrícula, sus dependientes y beneficiarios, para el pago de anualidades por retiro y por incapacidad, anualidades y beneficios por defunción y otros beneficios". . . 3 L.P.R.A sec. 761. *Aquino González v. A.E.E.L.A.*, res. en 25 de mayo de 2011, 2011 T.S.P.R. 77, 2011 J.T.S. 82, 182 D.P.R. ____(2011).

En virtud de ello, se facultó al Secretario de Hacienda a que realice los descuentos correspondientes al salario de cada empleado para fines de retiro. 3 L.P.R.A. sec. 780(f). A cambio de estos descuentos, se pretende que al momento de la jubilación, el empleado tenga derecho a recibir sus aportaciones o una anualidad, de modo que tenga, como mínimo, un ingreso fijo de subsistencia. *In re Castro y Torres Braschi*, 73 D.P.R. 564 (1952); *Calderón v. Adm. de los Sistemas de Retiro*, *supra*. Entre los fines más importantes de la referida legislación está "proteger a los empleados luego de ocupar un puesto público durante largos años". *In re Castro y Torres Braschi*, *supra*, pág. 571.

Inicialmente las pensiones del estado se consideraron como gracia o dádiva del soberano. Véase, *Bayrón Toro v.*

---

los jefes de agencias e instrumentalidades públicas, los miembros de comisiones y juntas nombradas por el Gobernador, el Contralor y los miembros de la Asamblea Legislativa". *Calderón v. Adm. de los Sistemas de Retiro*, 129 D.P.R. 1020, 1032 (1992).

*Serra*, 119 D.P.R. 605, 610-618 (1987). No obstante, desde

*Rivera v. Rodríguez*, 93 D.P.R. 21 (1966), sentamos las

bases para eliminar esa teoría arcaica. Allí expresamos

que

> [c]on el advenimiento de las democracias populares y la desaparición de los regímenes monárquicos, el fundamento jurídico de la pensión no lo constituye un acto de recompensa del soberano, sino una obligación moral del [E]stado". *Íd.*, pág. 24

En armonía con lo anterior, hemos dicho que

> [e]l derecho a pensión de retiro por años de servicio del empleado público tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado. *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 92 (1981). Véase, también, *Calderón v. Adm. de los Sistemas de Retiro*, *supra*, págs. 1041-1042 (1992); *Román Mayol v. Tribunal Superior*, 101 D.P.R. 807, 811 (1973).

Finalmente, en *Bayrón Toro v. Serra*, *supra*, pág. 618,

abandonamos expresamente la visión de la dádiva del

soberano en cuanto a las pensiones. En cambio, acogimos la

teoría contractual de las pensiones del gobierno. *Íd.*

La teoría contractual postula que entre el Estado y el

empleado hay un acuerdo de voluntades que produce un

efecto jurídico vinculante para ambas partes. *Bayrón Toro*

*v. Serra*, *supra*. Ello hace que el plan de retiro bajo las

disposiciones de la citada Ley Núm. 447, *supra*, sea parte

de ese contrato. Por esa razón la Asamblea Legislativa no

tiene facultad para menoscabar ese derecho adquirido de

naturaleza contractual, o que ha sido "comprado", por ese participante mediante aportaciones compulsorias provenientes de su salario. *Calderón v. Adm. de los Sistemas de Retiro*, *supra*, págs. 1041-1042.

La Ley Núm. 447, *supra*, contiene varias modalidades de pensiones o anualidades por retiro que incluyen: pensiones por edad; por años de servicio, que a su vez incluyen la pensión diferida luego de que el participante haya rendido diez (10) años o más de servicio; por incapacidad ocupacional; por incapacidad no ocupacional; y por mérito. *Padín Medina v. Adm. Sist. Retiro*, 171 D.P.R. 950, 963 esc. 32 (2007) (*Per Curiam*). 3 L.P.R.A. sec. 766.

No obstante, los pensionados han sufrido la erosión de sus anualidades debido, entre muchos factores, al aumento en el costo de vida. En armonía con lo anterior, la Asamblea Legislativa aprobó la Ley 10-1992, 3 L.P.R.A. sec. 766(e), mediante la cual se dispuso que se aumentarían en un "en un tres por ciento (3%) todas las anualidades que se paguen bajo las secs. 761 *et seq.*, de este título, por edad, años de servicio o incapacidad, que estén vigentes a esa fecha y que se hayan percibido por lo menos tres (3) años antes". Sin embargo, este aumento trienal no es automático, sino que necesita una recomendación favorable del actuario del Sistema de Retiro y cumplir con los demás requisitos de ley. 3 L.P.R.A. sec. 775. Una vez cumplidos estos requisitos, la Junta de

Síndicos deberá someter el aumento a la Asamblea Legislativa para su correspondiente aprobación. *Íd.*

Precisamente eso fue lo que se hizo mediante la aprobación de la Ley Núm. 35, *supra*. En dicho estatuto se reconoció que el "Gobierno enfrenta la obligación moral de ayudar a mejorar la condición de vida de lo(a)s pensionado(a)s, personas que dieron lo mejor de su vida en el servicio al Pueblo de Puerto Rico", pues el aumento en el costo de vida ha conllevado una merma relativa en el valor de las anualidades de los pensionados. Exposición de Motivos, Ley Núm. 35, *supra*. Por tanto, "en la obligación del Gobierno de atender las necesidades de lo(a)s pensionado(a)s, mediante esta Ley, se conceden dos (2) aumentos de tres (3) por ciento a las pensiones **concedidas bajo las disposiciones de la Ley Núm. 447**, antes citada, otorgadas con anterioridad al **primero (1ro.) de enero de 2004**". (Énfasis suplido).

> A estos efectos, la Asamblea Legislativa dispuso que
>
> Efectivo el primero (1ro.) de julio de 2007, retroactivo al primero (1ro) de enero de 2007, se aumentarán en un tres (3) por ciento todas las anualidades que se paguen bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, por mérito, edad y años de servicios o incapacidad, que estén vigentes a esa fecha y que hayan sido otorgadas con efectividad al primero (1ro.) de enero de 2004 o antes, conforme lo dispone la Ley Núm. 10 de 21 de mayo de 1992. La asignación de los recursos necesarios para cubrir el costo que conlleve el aumento en las pensiones de pensionado(a)s procedentes del Gobierno Central, será con cargo al Fondo General y deberá consignarse en el Presupuesto General para Gastos del Gobierno del Estado Libre Asociado de

> Puerto Rico para cada año fiscal, a partir del Año Fiscal 2007-2008. Las corporaciones públicas y los municipios, cuyos empleado(a)s estén cubiertos bajo esta Ley, cubrirán de recursos propios el costo que represente el aumento en pensiones establecido por esta Ley para lo(a)s pensionado(a)s de su corporación o municipio a partir del Año Fiscal 2007-2008, y años subsiguientes. El costo de la retroactividad del aumento de tres (3%) por ciento para lo(a)s pensionado(a)s del Gobierno Central, Corporaciones Públicas y Municipios, provendrá de asignaciones del Fondo General del Gobierno de Puerto Rico.

Conforme reseñado, el legislador dispuso ciertos requisitos para ser acreedor del referido aumento de la Ley Núm. 35, *supra*. Estos son: (1) que la anualidad se pague bajo la Ley Núm. 447, *supra*; entiéndase, por mérito, edad y años de servicios o incapacidad; (2) que esté vigente; y (3) que haya sido otorgada con efectividad al 1 de enero de 2004.

Por un lado, en el recurso CC-2011-500, el tribunal *a quo* concluyó que el señor Pagán Santiago cumplió con los requisitos de la Ley Núm. 35, *supra*, pues al 1 de enero de 2004, el señor Pagán Santiago llevaba cerca de tres (3) años pensionado. Para llegar a su conclusión, el Tribunal de Apelaciones interpretó que las pensiones de aquellas personas acogidas al beneficio de la Ley Núm. 174, *supra*, son pagadas por la Administración de Retiro bajo la Ley Núm. 447, *supra*, y que las distintas agencias meramente aportan las anualidades correspondientes y demás beneficios dispuestos en la Ley Núm. 174, *supra*.

De otro lado, en el recurso CC-2011-507, el Tribunal de Apelaciones interpretó que los requisitos para el aumento de la Ley Núm. 35, *supra*, son los siguientes: que las anualidades de retiro se paguen en virtud de la Ley Núm. 447, *supra,* para el 1 de enero de 2007; que esté vigente; y, que la pensión haya sido otorgada no más tarde al 1 de enero de 2004.

Así las cosas, debemos resolver si los recurridos son acreedores del aumento de tres por ciento (3%) concedido en la Ley Núm. 35, *supra*. No hay duda que los recurridos tienen una pensión vigente. Sin embargo, hay controversia en cuanto a si la pensión que reciben se paga bajo la Ley Núm. 447, *supra*, y si fue otorgada con efectividad al 1 de enero de 2004. Para hacer ese análisis es indispensable examinar la ley que permitió que los recurridos se retiraran con el beneficio del pago mensual de sus respectivas anualidades, -aun cuando no cumplían con los requisitos de retiro de la Ley Núm. 447, *supra*- en conjunto con la ley que confirió el aumento, a saber, la Ley Núm. 35, *supra*.

B.

Antes de interpretar las distintas piezas legislativas ante nuestra consideración, debemos exponer claramente cuáles son las reglas de hermenéutica que rigen la interpretación de estatutos.

En primer lugar, "si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa". *Soc. Asist. Leg. v. Ciencias Forenses*, 179 D.P.R. 849, 862 (2010). El Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, establece que cuando la ley es clara y libre de ambigüedad, los tribunales no deben menospreciar su letra so pretexto de cumplir con su espíritu o intención. *Cruz Parrilla v. Dpto. de la Vivienda*, res. en 23 de enero de 2012, 2012 T.S.P.R. 11, 2012 J.T.S. 11, 182 D.P.R. ____ (2012); *Soc. Asist. Leg. v. Ciencias Forenses*, *supra*; *Calderón v. Adm. de los Sistemas de Retiro*, *supra*, págs. 1033-1034 (1992).

Anteriormente hemos establecido que las pensiones en el sector público constituyen un incentivo para reclutar personal competente frente a los salarios más altos que, como regla general, ofrece la empresa privada. *Bayrón Toro v. Serra*, *supra*, pág. 616. También, hemos resuelto que este tipo de estatuto se caracteriza por ser uno remedial y por ende, debe ser interpretado de forma liberal, a favor del pensionado. *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 595 (1989); *Sánchez v. A.S.R.E.G.J.*, 116 D.P.R. 372, 378 (1985); *Acuña v. Junta de Retiro*, 58 D.P.R. 94, 100 (1941). No obstante lo anterior, en *Vargas v. Retiro*, 159 D.P.R. 248 (2003), establecimos que por el simple hecho de interpretar una ley que "crea un derecho

al disfrute de una pensión **no significa que debamos obviar la intención legislativa que propició su creación**". *Íd.*, págs. 263-264. (Énfasis suplido).

Por otro lado, la revisión judicial de las decisiones administrativas está limitada a los siguientes tres aspectos: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de Derecho fueron correctas mediante su revisión completa y absoluta. *García Fantauzzi v. Dir. Adm. Trib.*, res. en 8 de agosto de 2011, 2011 T.S.P.R. 115, 2011 J.T.S. 120, 182 D.P.R. ____ (2011); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 D.P.R. 923, 940 (2010).

Como corolario de lo anterior, la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq.*, dispone en su Sec. 4.5, que las conclusiones de Derecho de una agencia son revisables en su totalidad. 3 L.P.R.A. sec. 2175. Sin embargo, hemos expresado que

> merece gran deferencia y respeto la interpretación razonable de un estatuto que hace el organismo que lo administra y del cual es responsable. Aun en casos dudosos en los que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 D.P.R. 177, 186-187 (2009). (Citas omitidas).

En resumen, es norma de Derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia. Esta deferencia incluye la interpretación que haga la agencia administrativa sobre las leyes que está encargada de velar su cumplimiento. Véase *Torres Santiago v. Dpto. Justicia*, 181 D.P.R. 969, 1002-1004 (2011); *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*. Además, sus decisiones deben ser respetadas a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente. *Borschow Hosp. v. Jta. de Planificación*, 177 D.P.R. 549 (2009).

### C.

Aclarado el marco hermenéutico de autos, procedemos a analizar las legislaciones en cuestión.

La Ley Núm. 174, *supra*, en esencia, se creó como mecanismo de reducción de personal de la nómina de Gobierno. Así, la Asamblea Legislativa expresó que

> [c]omo es de conocimiento general, los recursos humanos empleados por las agencias exceden, en muchos casos, el número de empleados necesarios para cumplir efectivamente con las obligaciones asignadas a éstas. Conscientes del deber de procurar la continuación de la prestación de los servicios, de una manera eficiente, rápida y confiable, así como de contar con los recursos económicos suficientes que garanticen la presentación de los mismos, resulta necesario

establecer mecanismos de reducción de gastos, incluyendo la reducción del personal. Esta reducción de personal debe realizarse a través de sistemas innovadores como promoción del retiro temprano de estos servidores públicos. Exposición de Motivos, Ley Núm. 174, *supra*.

De esta forma, el legislador creó ahorros al fisco al permitir que ciertos empleados gubernamentales pudieran retirarse, y a su vez, obtener una anualidad por retiro, aún sin cumplir los requisitos de la Ley Núm. 447, *supra*. ¿Significa ello que las pensiones del retiro temprano dispuesto en la Ley Núm. 174, *supra*, se pagan "bajo la Ley Núm. 447, *supra*", según lo exige la Ley Núm. 35, *supra*? ¿Son los recurridos fideicomisarios activos que obtienen los beneficios del fideicomiso "bajo la Ley Núm. 447", *supra*? Todas estas preguntas serán pertinentes a los efectos de analizar si los recurridos son acreedores del aumento de la Ley Núm. 35, *supra*; es decir, estas preguntas son importantes para determinar si las pensiones de los recurridos, se pagan bajo la Ley Núm. 447, *supra*.

La Ley Núm. 174, *supra*, se aprobó para otorgar una anualidad por retiro a aquellos empleados públicos que aún no cumplían con los requisitos de retiro según la Ley Núm. 447, *supra*. Así una de las anualidades dispuestas en la Ley Núm. 174, *supra*, proveyó que todo participante que tuviera al menos veinticinco (25) años de servicio y cincuenta y cinco (55) años de edad, cualificaría para recibir una anualidad equivalente al setenta y cinco por ciento (75%) de su retribución promedio. Art. 4(a), Ley Núm. 174, *supra*, 3

L.P.R.A. sec. 5020(a). Igualmente, aquellos servidores públicos que tuvieran treinta (30) años de servicio y al menos cincuenta (50) años de edad, tendrían derecho a una anualidad equivalente al setenta y cinco por ciento (75%) de su retribución promedio. Art. 4(b), Ley Núm. 174, *supra*, 3 L.P.R.A. sec. 5020(b). Véase, además, Art. 4(d), Ley Núm. 174, *supra*, 3 L.P.R.A. sec. 5020(d).[3]

De otro lado, el Art. 7 de la Ley Núm. 174, *supra*, dispone que las anualidades otorgadas al amparo de dicho estatuto "no podrá[n] disminuirse, revocarse o derogarse, salvo cuando hubiese sido concedida por error, o cuando en forma explicita [sic] se dispone de otro modo en la Ley". Además, dispone que esas "*anualidades solamente podrán ser aumentadas mediante ley*". (Énfasis suplido).

Más importante aun, en cuanto al financiamiento del Programa de Retiro Temprano, el legislador dispuso el esquema para su funcionamiento en el Art. 10 de la Ley Núm. 174, *supra*. Por su trascendencia en esta controversia, lo reproducimos *in extenso*:

Artículo 10. – Aportación económica al Programa

(a) **La Agencia aportará al sistema de Retiro, el dinero en efectivo equivalente a la anualidad que por concepto de pensión recibirá el**

---

[3] Otra anualidad provista en la Ley Núm. 174-2000, es la siguiente:

"Todo participante que al 30 de diciembre de 2000 hubiere cumplido veinticinco (25) años o más, pero menos de treinta (30) años de servicios acreditables y aún no haya cumplido cincuenta y cinco (55) años de edad, recibirá una anualidad por retiro equivalente al sesenta y cinco por ciento (65%) de su retribución promedio". Art. 4(c) de la Ley Núm. 174-2000, 3 L.P.R.A. sec. 5020.

participante, por un periodo máximo de cinco (5) años a partir de la fecha de efectividad.

(b) **La Agencia aportará, además,** al Programa, lo siguiente:

1. **La aportación patronal e individual de cada participante acogido al Programa** a base del sueldo que devenga al momento de la separación del servicio.

2. **La aportación al Plan Médico** que esté vigente para los pensionados, bajo el Sistema de Retiro.

3. **El Bono Navideño,** a que tienen derecho los pensionados bajo el Sistema de Retiro patronales individuales de los empleados que se acojan a este programa de retiro temprano.

(c) **En el caso de las agencias que no constituyen una corporación pública la Oficina de Gerencia y Presupuesto asignará al Sistema de Retiro, en la Resolución Conjunta del Presupuesto General, los recursos necesarios para cubrir el pago de las económicas, [sic] según dispuestas en los incisos (a) y (b), correspondientes a los empleados acogidos al programa.** Estas asignaciones presupuestarias comenzarán a partir del año fiscal 2000-2001, hasta que se cumpla con lo establecido en el inciso (a) de este Artículo.
Para que la Oficina de Gerencia y Presupuesto pueda hacer las asignaciones presupuestarias pertinentes, **se requerirá que el Administrador del Sistema de Retiro someta en detalle, un certificado de los fondos que anticipa serán necesarios para cada Año Económico.**

(d) En el caso de **las corporaciones públicas estas incluirán en sus prepuestos funcionales anuales las cantidades necesarias para cubrir el pago de las pensiones y de las aportaciones patronales** individuales de los empleados que se acojan a este programa de retiro temprano.

(e) **El total de las aportaciones económicas de los patronos participantes será remitido al Sistema de Retiro,** después de cuarenta (40)

     días de haberse firmado la Resolución Conjunta del Presupuesto General de cada año económico.

    (f) Si una agencia o corporación cesare sus operaciones, la aportación económica será sufragada mediante el anticipo de fondos provenientes del Fondo General, desembolsados por el Secretario de Hacienda. Estos anticipos serán repagados. (Énfasis suplido).

Este artículo de la Ley Núm. 174, *supra*, denota que de las anualidades dispuestas en dicho estatuto son financiadas de forma distinta y separada a las anualidades que se pagan "bajo la Ley 447", *supra*. De un lado, la Ley Núm. 174, *supra*, se financia con el pago de la anualidad correspondiente por parte de la respectiva agencia. Estos fondos son meramente administrados por el Sistema de Retiro. Arts. 2(a)(o) y 11, Ley Núm. 174, *supra*, 3 L.P.R.A. 5018 y 5027. Además, el Administrador de los Sistemas de Retiro es quien tiene el deber de someter un Certificado a la Oficina de Gerencia y Presupuesto para que haga las asignaciones correspondientes en el Presupuesto General de Puerto Rico. Art. 10(c), Ley Núm. 174, *supra*, 3 L.P.R.A. sec. 5026. Así por ejemplo, la agencia o corporación pública de la cual el empleado se jubile, es quien sufragaría el costo de la anualidad. Más aun, también sería responsable de continuar sometiendo las aportaciones patronales al Sistema de Retiro —como si el empleado continuara trabajando, aún sin acogerse a la pensión bajo la Ley Núm. 447, *supra*; pagar el plan médico, y hasta el Bono de Navidad.

Por otro lado, las pensiones que se pagan al palio de

la Ley Núm. 447, *supra*, son partícipes de los fondos del fideicomiso creado por medio de la misma legislación. Es decir, los fondos asignados para pagar las anualidades de retiro temprano son distintos a los del fideicomiso que, en esencia, se nutre de las aportaciones mensuales del patrono y los empleados.

De lo anterior colegimos que aunque la administración de este denominado Programa de Retiro Temprano fue delegada al Administrador de los Sistemas de Retiro, Arts. 2(a)(o) y 11, Ley Núm. 174, *supra*, ello no significa que los pensionados bajo la Ley Núm. 174, *supra*, entraron automáticamente luego de su jubilación, a participar de los fondos del Sistema de Retiro, según dispuesto en la Ley Núm. 447, *supra*. *A contrario sensu*, el Programa de Retiro Temprano es uno separado del retiro por edad y años de servicios, incapacidad o mérito, según dispuesto en la Ley Núm. 447, *supra*.

El diseño de la Ley Núm. 174, *supra*, confirma esta conclusión. Realmente, al preciso momento de su retiro, los empleados públicos que no cumplían con los requisitos de retiro de la Ley Núm. 447, *supra*, tuvieron la opción de optar por requisitos más laxos para la cualificación de determinada anualidad por retiro. Sin embargo, estos servidores públicos retirados bajo la Ley Núm. 174, *supra*, no ingresaron al Sistema de Retiro del fideicomiso creado en la Ley Núm. 447, *supra*. Así, la propia Ley Núm. 174,

*supra*, reconoce que hay un período que le falta a los participantes para acogerse a la jubilación del sistema de Retiro.[4] Con ello, la Ley Núm. 174, *supra*, creó un Programa de Retiro Temporero con una duración máxima de cinco (5) años, hasta tanto el jubilado pudiera entrar a beneficiarse de los fondos del fideicomiso del Sistema de Retiro.

En armonía con lo anterior, queda claro que la Asamblea Legislativa creó un Programa distinto y transicional, mediante el cual determinados servidores públicos podrían retirarse con una anualidad por retiro, previo a cumplir los requisitos del Sistema de Retiro dispuestos en la Ley Núm. 447, *supra*. Por ello, buscó la forma de financiar el nuevo Programa de Retiro Temprano y se dispuso que los jubilados cobraran sus anualidades de un fondo distinto al fideicomiso; es decir, sin tomar dinero del fideicomiso creado en la Ley Núm. 447, *supra*. Este fondo de la Ley Núm. 174, *supra*, aunque ciertamente administrado por el Sistema de Retiro, es sufragado con dinero de la agencia o corporación pública a la cual

---

[4] Artículo 14.-Liquidación de Licencia por Vacaciones, Licencia Por enfermedad y otras Bonificaciones.

Cualquier suma que tenga derecho a recibir un Participante como liquidación final por concepto de licencia por vacaciones, licencia por enfermedad u otras bonificaciones acumuladas que le adeude la agencia le será pagada **en plazos mensuales iguales durante un período de meses equivalentes al período que le faltaría al Participante para acogerse a la jubilación bajo el Sistema de Retiro.** (Énfasis suplido).

pertenecía el participante al momento de acogerse a los beneficios de la Ley Núm. 174, *supra*.

El legislador tuvo la intención de no interferir con los planes y fórmulas actuariales con las que se maneja el complicado fideicomiso del Sistema de Retiro. Lejos de ello, dispuso un Programa de Retiro Temprano temporero, mediante el cual se disminuiría la cantidad de empleados públicos, proveyéndoles el beneficio de retiro temprano y todo ello, sin tener que intervenir con los fondos del fideicomiso. Por esta razón, las aportaciones patronales al Sistema de Retiro continuaron durante el tiempo en que el pensionado aún no cumpliera los requisitos para entrar a la nómina regular del Sistema de Retiro; es decir, mientras su anualidad era sufragada con los fondos de la Ley Núm. 174, *supra*. Véase, Art. 10 de la Ley Núm. 174, *supra*.

De todo lo anterior, se puede concluir que las pensiones pagadas según las disposiciones de la Ley Núm. 174, *supra*, no son pagadas "bajo la Ley Núm. 447", *supra*, hasta que el pensionado cumpla los requisitos para obtener una pensión según lo dispuesto en la Ley Núm. 447, *supra*. En ausencia de una manifestación legislativa clara a los efectos de que se asignaron los fondos correspondientes para aumentar las anualidades de aquellos pensionados quienes obtienen su anualidad de los fondos de las agencias de las cuales se jubilaron, no podemos interferir

con las delicadas fórmulas actuariales con las que se administra el fideicomiso en que están los dineros y la confianza de miles de servidores públicos.

Al concluir que el Programa de Retiro Temprano de la Ley Núm. 174, *supra*, es uno transicional y distinto al retiro de la Ley Núm. 447, *supra*, colegimos que para que una persona retirada según las disposiciones de la Ley Núm. 174, *supra*, sea acreedora del aumento dispuesto en la Ley Núm. 35, *supra*, es necesario que al 1 de enero de 2004, haya comenzado a recibir su anualidad pagada con fondos del fideicomiso de la Ley Núm. 447, *supra*, y que dicha pensión estuviera vigente al momento de la otorgación del aumento. Siendo esta una interpretación razonable de la agencia encargada de velar el cumplimiento de las leyes que hoy interpretamos, merece nuestra deferencia. Además, nada en el historial legislativo nos inclina a pensar el legislador dispuso la forma de financiar el aumento de tres por ciento (3%) para aquellos retirados quienes al 1 de enero de 2004, permanecían recibiendo su anualidad de los fondos de la Ley Núm. 174, *supra*. **Los jueces debemos abstenernos de sustituir el criterio legislativo por lo que puedan ser nuestros conceptos de lo "justo razonable y deseable".** *Aquino González v. A.E.E.L.A.*, *supra*. (Énfasis suplido).

III

En este caso no existe controversia en cuanto a que los recurridos tienen una pensión vigente. Sin embargo, debemos determinar si al 1 de enero de 2004, la pensión de los recurridos se pagaba "bajo la Ley Núm. 447, *supra*".

El señor Pagán Santiago solicitó la anualidad por retiro de la Ley Núm. 174, *supra*. Su solicitud fue aprobada el 1 de mayo de 2001. Se retiró con veintiséis punto setenta y cinco (26.75) años de servicio acreditados al Sistema de Retiro y con cincuenta y cinco (55) años de edad, esto calculado al 31 de diciembre de 2000. Se desprende de las determinaciones de hecho que el señor Pagán Santiago cumplió con los requisitos de la Ley Núm. 447, *supra*, el 1 de abril de 2004. Así las cosas, el señor Pagán Santiago cobró los beneficios de la Ley Núm. 174, *supra*, desde el 1 de mayo de 2001 hasta el 1 de abril de 2004, cuando cumplió con los requisitos de retiro de la Ley Núm. 447, *supra*. Por tanto, para la fecha del 1 de enero de 2004, el señor Pagán aún cobraba su pensión bajo las disposiciones de la Ley Núm. 174, *supra*, y no bajo la Ley Núm. 447, *supra*, según se exige para la otorgación del referido aumento de tres por ciento (3%). Por tal razón, el señor Pagán Santiago, no tenía derecho a recibir el aumento estatuido en la Ley Núm. 35, *supra*.

Por otra parte, la señora Ortiz Rivera decidió acogerse a los beneficios del Programa de Retiro Temprano cuando tenía acreditados veinticinco punto setenta y cinco

(25.75) años acreditados al Sistema de Retiro y cuarenta y cuatro (44) años de edad. Por su parte, la señora Ortiz Rivera no cumplió con los requisitos de ingreso al fideicomiso del Sistema de Retiro hasta el 1 de octubre de 2005. Por tanto, tampoco cumple con el requisito exigido en la Ley Núm. 35, *supra*, a los efectos de que para el 1 de enero de 2004, su pensión se pagara "bajo la Ley Núm. 447", *supra*. En conclusión, la señora Ortiz Rivera no tenía derecho a recibir el aumento dispuesto en la Ley Núm. 35, *supra*.[5]

## IV

Resuelto que ninguno de los recurridos son acreedores del aumento de tres por ciento (3%), resta decidir si procede la devolución de fondos públicos pagados por error. De un lado, la agencia aduce que el pago fue hecho por un error de hecho ya que el sistema de contabilidad no distingue entre los pensionados que cualificaban para al aumento y los que no cualificaban. Por ello, la Administración del Sistema de Retiro argumenta que procede la devolución de dinero pagado por error. Por otro lado, el recurrido arguye que la agencia ha hecho una reinterpretación del derecho al primeramente otorgarle el

---

[5] No tiene mérito alguno la conclusión hecha por el Tribunal de Apelaciones en el recurso CC-2011-507, al interpretar que el pensionado debe tener una pensión vigente bajo la Ley Núm. 447, *supra*, al 1 de enero de 2007. Una somera lectura de la Ley Núm. 35, *supra*, revela que la fecha del 1 de enero de 2007 tiene que ver con la retroactividad de la otorgación del aumento, no con los elementos necesarios para obtener el aumento.

referido aumento y eventualmente interpretar que no le correspondía.

El Art. 1042 del Código Civil de Puerto Rico, dispone que "[l]as obligaciones nacen de la ley, los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia". 31 L.P.R.A. sec. 2992. Más adelante, en el Art. 1787 del referido cuerpo legal, se define el cuasicontrato como "los hechos lícitos y puramente voluntarios, de los que resulta obligado su autor para con un tercero y a veces una obligación recíproca entre los interesados". 31 L.P.R.A. sec. 5091. El Código Civil regula expresamente dos (2) tipos de cuasicontratos: la gestión de negocio ajeno y el cobro de lo indebido. Véanse, Arts. 1788-1801 del Código Civil, 31 L.P.R.A. secs. 5101-5127. En esta ocasión, examinamos el supuesto del cobro de lo indebido y su articulado dispuesto en los Arts. 1795-1801, *supra*.

El cobro de lo indebido produce ciertas obligaciones, en particular, reguladas en el articulado anteriormente citado. La obligación más fundamental que produce el cobro de lo indebido es la restitución de la cosa recibida indebidamente. Dice el Art. 1795 del Código Civil, 31 L.P.R.A. sec. 5121, que "cuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla".

Para que el cobro de lo indebido genere la obligación de restitución, hemos reconocido la necesidad de la concurrencia de tres (3) requisitos:

> (1) que se produzca un pago con intención de extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, que no exista obligación jurídica entre el que paga y el que cobra, o si la obligación existe, que sea por una cuantía menor a la pagada, y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto". *E.L.A. v. Crespo Torres*, 180 D.P.R. 776, 793-794 (2011); *Sepúlveda v. Dpto. de Salud*, 145 D.P.R. 560, 566 (1998).

A tenor con lo anterior, la obligación de restitución por el cobro de lo indebido surge cuando se hizo un pago con intención de extinguir una obligación, pero entre las partes no había una obligación jurídica, o aun si existiera dicha obligación, el pago fue realizado por una cuantía mayor a la debida. Además, los tribunales deben auscultar si el pago se realizó por error, y no por mera liberalidad o algún otro concepto.

El Art. 1801 del Código Civil, 31 L.P.R.A. sec. 5123, dispone que "[s]e presume que hubo error en el pago cuando se entregó cosa que nunca se debió o que ya estaba pagada". . . El mismo artículo aclara que dicha presunción es una de carácter *iuris tantum* pues aquel quien recibió el pago que se alegó como indebido, "puede probar que la entrega se hizo a título de liberalidad o por otra causa".

Aunque el Código Civil no especifica qué tipo de error es el que se refiere el Art. 1795, *supra*, desde *Arandes v.*

*Báez*, 20 D.P.R. 388 (1914), este Tribunal adoptó la visión de Manresa en cuanto a que el error de hecho es el único que genera la obligación de restitución; por el contrario, el error de derecho no genera dicha obligación. Esta distinción se debe, en particular, a la noción de que el error de derecho no aprovecha a nadie porque "la ignorancia de las leyes no excusa de su cumplimiento". Art. 2 del Código Civil, 31 L.P.R.A. sec. 2. Véase, J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 2da ed., Madrid, Tomo XII, pág. 590.

En *Sepúlveda v. Dpto. de Salud*, *supra*, pág. 568, definimos el error de derecho como:

> [a]quel en el que incurre quien actúa sin ajustarse a lo dispuesto por una norma jurídica vigente. En el contexto del cobro de lo indebido, comete error de derecho quien realiza un pago bajo la creencia de que el mismo le es exigible en derecho, bien por desconocimiento de la norma que lo descarga del pago, bien por una interpretación errónea del derecho aplicable.

La doctrina del error de Derecho impide que quien pagó indebidamente -por error de Derecho-, pueda exigir la devolución de lo pagado. Ello es así, aun cuando lo pagado indebidamente se trate de fondos públicos. *Cartagena v. E.L.A.*, 116 D.P.R. 254, 257 (1985).

Por otro lado, el error de hecho ocurre cuando se actúa de acuerdo a unos hechos que no son verdaderos o "cuando, aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite". *E.L.A. v. Crespo Torres*, *supra*, pág. 794; citando *Sepúlveda v. Dpto.*

*de Salud*, supra, pág. 568. Este tipo de error es el que también se conoce como error humano, o matemático. A diferencia de cuando el pago se realiza por error de Derecho, el error de hecho provoca el surgimiento de la obligación de restituir lo indebidamente pagado. Art. 1795 del Código Civil, *supra*.[6]

En síntesis, la doctrina del error de Derecho exime a quien recibió el pago indebido de la devolución o restitución de lo pagado. No obstante, si el error se estima que es de hecho, surge la obligación de restituir lo pagado indebidamente.

Recientemente, en *E.L.A. v. Crespo*, *supra*, revocamos la diferenciación entre error de hecho y error de Derecho en materia del cobro de lo indebido. *Íd.*, pág. 797. Sin embargo, al excluir la distinción entre error de hecho y error de Derecho, dispusimos que la aplicación de la norma de ese caso sería aplicada de manera prospectiva. *Íd.*, págs. 797-799. Los hechos del caso ante nos son anteriores a la norma expuesta en *E.L.A. v. Crespo Torres*, *supra*; por tanto, debemos aplicar la norma vigente al momento de los hechos que dieron génesis a la controversia del caso de autos, pues aunque fue revocada, dicha revocación es de aplicación prospectiva a casos que surjan luego de la Opinión emitida

---

[6] Véase, además, L. Díez Picazo, *Fundamentos del Derecho Civil Patrimonial*, 6ta ed., Ed. Aranzadi, 2008, Vol. II, pág. 590; J.R. Vélez Torres y Fraticelli Torres, *Derecho de Obligaciones*, 2da ed., San Juan, Prog. Ed. Jur. Continua, Univ. Inter. de P.R., 1997, págs. 356-357; M. Albaladejo, *Curso de Derecho Civil Español*, Barcelona, Librería Bosch, 1984, II, pág. 554.

en *E.L.A. v. Crespo Torres*, *supra*. Véase, *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 D.P.R. 483, 499-500 (1999). Por tal razón, debemos aplicar la norma anterior a *E.L.A. v. Crespo Torres*, *supra*, y resolver si los pagos en controversia se hicieron en virtud de un error de hecho o de Derecho.

En este caso, la Administración de Retiro hizo pagos con intención de cumplir su obligación de pagar las respectivas anualidades bajo la Ley Núm. 174, *supra*. Ciertamente, existe una obligación previa, pero esta era por un monto menor pues se pagó un aumento equivalente a un tres por ciento (3%).

En cuanto a si el pago fue hecho por error de hecho o de Derecho, consideramos que el pago fue realizado a causa de un error de hecho. En primer lugar, la otorgación errónea del aumento fue debido a un error administrativo de contabilidad, al sistema no diferenciar entre los pensionados bajo la Ley Núm. 174, *supra*, a quienes no les correspondía el aumento. Esto equivale a concluir que el pago del aumento a los recurridos no fue otra cosa que un error de trámite. Los recurridos no han demostrado que la Administración de Retiro hizo el pago por desconocimiento de la norma de Derecho vigente o por una interpretación errónea de la Ley Núm. 35, *supra*. *A contrario sensu*, el Sistema de Retiro reconoció, desde la carta de aprobación de las respectivas pensiones, que los recurridos estaban

acogiéndose a un retiro transicional, según lo dispuesto en la Ley Núm. 174, *supra*, y que eventualmente ingresarían al fideicomiso del Sistema de Retiro, cuando cumplieran con los requisitos dispuestos en la Ley Núm. 447, *supra*. Es por ello que resolvemos que la Administración de Retiro realizó los pagos del aumento en cuestión a causa de un error de trámite, es decir, de hecho. No erró la Junta de Síndicos al confirmar la acción de la Administración de los Sistemas de Retiro en cobrar las cantidades pagadas por error.

V

Por los fundamentos antes expuestos, se expiden los autos de *Certiorari* y se revocan las Sentencias emitidas por el Tribunal de Apelaciones. Se reinstala la Resolución emitida por la Junta de Síndicos.

Se dictará Sentencia de conformidad.


                                        Mildred G. Pabón Charneco
                                             Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael Domingo Pagán Santiago<br><br>      Recurrido<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del Gobierno del ELA de Puerto Rico y la Judicatura<br><br>      Peticionaria<br><br>─────────────<br><br>Ana Matilde Ortiz Rivera<br><br>      Recurrida<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del Gobierno del ELA de Puerto Rico y la Judicatura<br><br>      Peticionaria | CC-2011-0500<br><br>cons.<br><br>CC-2011-0507 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 10 de abril de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se expiden los autos de *Certiorari* y se revocan los dictámenes del Tribunal de Apelaciones. Se reinstala la Resolución emitida por la Junta de Síndicos.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Larissa Ortiz Modestti
Secretaria del Tribunal Supremo, Interina