EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Partido Nuevo Progresista, Representado por su Secretario General, Rafael "June" Rivera<br><br>    Recurrido<br><br>         v.<br><br>Comité Local PNP Gurabo, por Conducto de Vimarie Peña Dávila y Otros<br><br>    Peticionarios | Certiorari<br><br>2017 TSPR 45<br><br>197 DPR ____ |

Número del Caso: CC-2017-146

Fecha: 3 de marzo de 2017

Abogado de la parte Peticionaria:

 Lcdo. Rómulo Suero Ponce

Materia: Resolución con voto particular disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Partido Nuevo Progresista, representado por su Secretario General, Rafael "June" Rivera<br><br>    Recurrido<br><br>      v.<br><br>Comité Local PNP Gurabo, por conducto de Vimarie Peña Dávila y Otros<br><br>    Peticionarios | CC-2017-0146 | Certiorari |

RESOLUCIÓN

San Juan, Puerto Rico, a 3 de marzo de 2017.

Examinada la *Solicitud Urgente en Auxilio de Jurisdicción* y la *petición de certiorari*, se provee no ha lugar a ambas.

Notifíquese **inmediatamente** por teléfono, correo electrónico y por la vía ordinaria.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez proveerían ha lugar a ambas. El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente al cual se unen la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Partido Nuevo Progresista Representado por su Secretario General, Rafael "June" Rivera<br><br>    Recurrido<br><br>        v.<br><br>Comité Local PNP Gurabo por conducto de Vilmarie Peña Dávila, Rafael Rodríguez Rivera, Rachely Rivera Santana y Víctor Rosa Pérez; Legislatura Municipal por conducto de su presidenta la Hon. María E. Rodríguez<br><br>    Peticionarios | CC-2017-146 | *Certiorari* |

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ al cual se unen la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ y el Juez Asociado SEÑOR COLÓN PÉREZ

San Juan, Puerto Rico, a 3 de marzo de 2017.

Nos encontramos ante una controversia de alto interés público donde teníamos la oportunidad de pronunciarnos en cuanto a cuál procedimiento es el aplicable para la selección de un nuevo Alcalde de un municipio cuando el electo no juramentó. En ese sentido, nos correspondía determinar si en estos supuestos aplican las disposiciones de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 o de la Ley Electoral del Estado Libre Asociado de Puerto Rico. Ante la importancia

de los procesos electorales, considero que este Tribunal debió ejercer su rol de máximo adjudicador y atender el recurso presentado. Particularmente, considero que procedía reafirmar la vigencia del Art. 3.003 de la Ley de Municipios Autónomos, 21 LPRA sec. 4103, el cual dispone de forma expresa y específica el proceso que debe seguirse en circunstancias en que el Alcalde electo no toma posesión del cargo. No obstante, hoy una Mayoría de este Tribunal, declina considerar la solicitud en auxilio de jurisdicción y la petición de *certiorari* presentadas, con el efecto de mantener vigente la sentencia del Tribunal de Apelaciones, y con ello, se sostiene una interpretación errada de las disposiciones de estos estatutos a los efectos de que el Art. 3.003 de la referida Ley fue derogado tácitamente. Ello, en clara contravención con los principios de hermenéutica jurídica. En consecuencia, disiento de la determinación tomada por una Mayoría de este Tribunal.

Para una cabal comprensión de este asunto, procedo a exponer el contexto fáctico y procesal en el que se desató la cuestión planteada ante nos.

## I

Los hechos que originan la controversia ante nuestra consideración tienen su génesis cuando el Sr. Víctor M. Ortiz Díaz, quien fuera el Alcalde de Gurabo desde el 2005 al 2016, fue electo a un nuevo término en las pasadas elecciones de 2016. No obstante, el 7 de diciembre de

2016, el Federal Bureau of Investigation (FBI) lo arrestó y fue acusado de corrupción pública por extorsión y solicitar soborno. Ante esto, la Oficina del Panel sobre el Fiscal Especial Independiente (PFEI) lo suspendió de su puesto de Alcalde. Conforme a la ley, el Alcalde electo debió haber juramentado el 9 de enero de 2017. Al no haber juramentado, la Legislatura Municipal le otorgó un término adicional de quince (15) días para juramentar y tomar posesión de su cargo. Transcurrida la prórroga, quedó vacante el puesto de Alcalde del Municipio de Gurabo. Así las cosas, la Legislatura Municipal decidió llenar la vacante y notificó al Comité Local, conforme a la Ley de Municipios Autónomos. Sin embargo, no le notificó al organismo estatal. A raíz de ello, el organismo local señaló una asamblea de delegados para el 2 de febrero de 2017.

En desacuerdo con lo anterior, el Partido Nuevo Progresista (PNP) presentó una *Petición Urgente de Entredicho Preliminar, Injunction Preliminar y Permanente* ante el Tribunal de Primera Instancia, Sala Superior de Caguas, contra el Comité Local del PNP en Gurabo (Comité Local) y la Legislatura Municipal de Gurabo (Legislatura Municipal). En ésta, los peticionarios solicitaron el auxilio del Tribunal y alegaron que las acciones tomadas por el Comité Local y la Legislatura Municipal limitaban el derecho de los electores y la libre competencia entre los aspirantes al puesto de Alcalde. Específicamente,

arguyeron que la Legislatura Municipal actuó en completa contravención a lo establecido en la Ley Electoral, y que los artículos de la Ley de Municipios Autónomos fueron derogados de forma tácita.

Por su parte, la Legislatura Municipal cuestionó la legitimación activa del PNP y alegó que la vacante debía llenarse de acuerdo al procedimiento establecido en el Art. 3.003 de la Ley de Municipios Autónomos, 21 LPRA sec. 4103.

Evaluadas las posturas de las partes, y tras la celebración de una vista el 31 de enero de 2017, el Tribunal de Primera Instancia emitió una *Sentencia* en la que determinó que el PNP tenía legitimación activa; que no procedía la paralización del proceso de selección del Alcalde de Gurabo, y que la vacante debía llenarse conforme al proceso que dispone la Ley de Municipios Autónomos.

Particularmente, el foro primario fundamentó su determinación en que el Art. 3.003 de la Ley de Municipios Autónomos es la única disposición legal vigente que establece un procedimiento para designar a una persona al puesto de Alcalde en el caso particular en el que el Alcalde electo no toma posesión de su cargo. A tales efectos, determinó que el citado artículo se encuentra vigente y no ha sido derogado expresa ni tácitamente por ninguna ley posterior. De otra parte, expresó que la aplicación del Art. 9.006(4) de la Ley Electoral, 16 LPRA

sec. 4146, sólo se limita al Art. 3.004 de la Ley de Municipios Autónomos, 21 LPRA sec. 4104, que regula el proceso en situaciones de renuncia, muerte, destitución, incapacidad total o permanente o cualquier otra causa. Ello, con excepción del procedimiento aplicable cuando un Alcalde electo no toma posesión.

Inconformes, el 2 de febrero de 2017, los peticionarios acudieron al Tribunal de Apelaciones mediante un *Recurso de Apelación*. En éste, solicitaron que se revocara el dictamen emitido por el foro primario. Además, arguyeron que erró el Tribunal de Primera Instancia al determinar improcedente el recurso de interdicto presentado por el PNP.

En esa misma fecha, el foro apelativo intermedio ordenó la paralización de todos los procedimientos ante la Legislatura Municipal de Gurabo y el Comité Local, y le concedió un término a los recurridos para presentar los correspondientes alegatos en oposición.

Examinados los escritos de las partes, el 6 de febrero de 2017, el Tribunal de Apelaciones emitió una *Sentencia* mediante la cual revocó al foro primario. A esos efectos, dictaminó que la vacante en el Municipio de Gurabo debía ser llenada conforme a la Ley Electoral. Fundamentó su determinación en que la enmienda realizada en el año 2014 a la Ley Electoral extendió la aplicación del Art. 9.006(4) a cualquier otra causa que ocasione una vacante permanente en el cargo de Alcalde fuera del año

electoral, lo que incluye aquellos casos en los que el Alcalde electo no juramenta. Así, concluyó que la referida enmienda tuvo como objetivo que el proceso de seleccionar a un nuevo alcalde se realice a través de una elección especial. Además, señaló que el Art. 3.003 de la Ley de Municipios Autónomos fue derogado tácitamente por las enmiendas realizadas en la Ley Núm. 239-2014, ya que éstas establecen un procedimiento distinto al dispuesto en la Ley de Municipios Autónomos para llenar la vacante de un Alcalde electo no juramentado.

En desacuerdo, el 24 de febrero de 2017, el Comité Local recurre a este Tribunal. En síntesis, arguye que erró el Tribunal de Apelaciones al determinar que la vacante debe ser llenada conforme al Art. 9.006(4) de la Ley Electoral y que el Art. 3.003 de la Ley de Municipios Autónomos fue derogado tácitamente. Así pues, argumenta que el Art. 3.003 es la única disposición legal que reglamenta el procedimiento para cubrir una vacante cuando el Alcalde electo no toma posesión por no juramentar. Por lo tanto, aduce que ambas disposiciones legales reglamentan situaciones distintas y que no son contrarias ni irreconciliables.

Posteriormente, el 1 de marzo de 2017, el referido Comité presentó una *Solitud Urgente en Auxilio de Jurisdicción*, en la cual alegó que a pesar de haberse radicado el *certiorari* y notificado al Comité Central del PNP, se publicó en el periódico El Vocero una notificación

de apertura de radicación de candidatura y se fijó la fecha de elección para el 2 de abril de 2017. Ante estos hechos, y la inminente campaña electoral para la alcaldía que se desarrolla bajo los parámetros delineados por el Comité Central del PNP, solicitó que se paralizara el proceso para cubrir la vacante.

A la luz del marco fáctico que antecede, procedo a exponer el derecho aplicable.

**II**

En el descargo de nuestra función adjudicativa, y para un entendimiento cabal de las cuestiones de derecho que se deben analizar y resolver, considero que es menester examinar, en primer término, los principios de hermenéutica jurídica aplicables a este caso.

**A.**

Es un principio cardinal de hermenéutica que cuando la ley es clara y libre de ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu. Art. 14 del Código Civil de PR, 31 LPRA sec. 14. Véase, también: Zayas Rodríguez v. PRTC, res. el 10 de junio de 2016, 2016 TSPR 118, pág. 16; Rosado Molina v. ELA, res. el 18 de mayo de 2016, 2016 TSPR 95, pág. 9.; San Gerónimo Caribe Project v. Registradora, 189 DPR 849, 866 (2013). Cónsono con lo anterior, es norma reiterada que al interpretar un estatuto primero debemos remitirnos al texto de la ley. Ello, ya que si el legislador se expresó de forma clara e inequívoca, es el propio texto de la ley

la expresión misma de la intención legislativa. Banco Santander de Puerto Rico v. Correa García, res. el 16 de septiembre de 2016, 2016 TSPR 201, pág. 14; Pueblo v. Torres Santiago, 175 DPR 116, 127 (2008); Romero Barceló v. ELA, 169 DPR 460, 476-477 (2006). Por tanto, no hay que indagar más allá de la ley, con el pretexto de cumplir con el propósito legislativo, cuando su texto es claro. En consecuencia, nos corresponde hacer cumplir la verdadera intención legislativa, según expresada en la misma ley. Soc. Asist. Leg. v. Ciencias Forences, 179 DPR 849, 862 (2010).

De igual forma, es de vital importancia interpretar una ley en su conjunto y no por secciones separadas. Rosado Molina v. ELA, *supra*, pág. 10; Asoc. Fcias v. Caribe Specialty *et al*. II, 179 DPR 923, 939-940 (2010); Soc. Asist. Leg. v. Ciencias Forences, *supra*, pág. 863. Así, en el ejercicio de nuestra facultad como últimos intérpretes de la ley debemos armonizar todas las disposiciones de la ley, en aras de obtener un resultado más sensato, lógico y razonable. Ríos Martínez v. Comisión Local de Elecciones de Villalba, Precinto 065, res. el 24 de agosto de 2016, 2016 TSPR 188, pág. 7; Asoc. Fcias v. Caribe Specialty *et al*. II, *supra*, pág. 940; Suc. Álvarez v. Srio. De Justicia, 150 DPR 252, 276 (2000).

No obstante, si existen ambigüedades en la ley habrá que interpretarla de tal forma que no se produzca un resultado absurdo o contrario a la intención o propósito

legislativo. Rosado Molina v. ELA, *supra*, pág. 11; IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 740 (2012). En esos casos, los tribunales podrán recurrir a fuentes extrínsecas al texto de la ley, como el historial legislativo, los informes de comisiones y los debates legislativos. Const. José Carro v. Mun. Dorado, 186 DPR 113, 127 (2012); Báez Rodríguez *et al.* v. E.L.A., 179 DPR 231, 245 (2010); Pueblo v. Zayas Rodríguez, 147 DPR 530, 539 (1999). Véase, también: R. Elfren Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. JTS, 1987, pág. 243.

A tenor con lo antes discutido, procedo a examinar las disposiciones pertinentes de la Ley de Municipios Autónomos y la Ley Electoral. Veamos.

**B.**

Nuestro ordenamiento jurídico establece el procedimiento a seguir cuando ocurre una vacante de un cargo público electo. Particularmente, la Ley de Municipios Autónomos establece varias disposiciones atinentes al proceso que debe aplicar cuando surge una vacante para el puesto de Alcalde. De entrada, el Art. 3.003 reconoce expresamente un proceso particular para llenar la vacante cuando el Alcalde electo no juramenta luego de su elección. En este caso, se le concederá un término de quince (15) días adicionales, de haber justa causa, para juramentar. Si en ese término no ocurriera, la

Legislatura Municipal deberá solicitar un candidato para cubrir la vacante al organismo directivo local del partido político que eligió al Alcalde. Si el organismo directivo local no presenta el candidato, procede que la Legislatura Municipal notifique al Presidente del partido político al cual pertenezca el Alcalde electo, quien cubrirá la vacante con la persona designada por el cuerpo directivo central. 21 LPRA sec. 4103.

Por otro lado, los Arts. 3.004 y 3.005 de la Ley de Municipios Autónomos aplican a otras causales que producen una vacante, tales como renuncia, muerte, destitución, entre otras. 21 LPRA secs. 4104-4105. Así por ejemplo, en los casos de renuncia, la Legislatura Municipal, cuerpo ante el cual se debe presentar la referida renuncia, deberá notificar de forma inmediata al organismo directivo local y al estatal del partido político que eligió al Alcalde que renunció. 21 LPRA sec. 4104. No obstante, existe diferencia entre el procedimiento aplicable cuando la renuncia ocurre dentro del año electoral y cuando ocurre fuera de éste.

Si es en la primera circunstancia, es decir, dentro del año electoral, el organismo directivo local deberá someter a la Legislatura Municipal un candidato para sustituir al alcalde renunciante dentro de los quince (15) días desde la notificación. Si no se somete el referido candidato, se deberá notificar al Presidente del partido político quien cubrirá la vacante con el candidato que

seleccione el cuerpo directivo central. Por el contrario, si la vacante ocurre fuera del año electoral, se debe celebrar dentro de treinta (30) días una votación especial entre los miembros del partido al que pertenecía el Alcalde renunciante. Esta votación especial se debe llevar a cabo conforme al Art. 9.006(4) de la Ley Electoral.

Cabe señalar que el proceso dispuesto en el Art. 3.004 fue el resultado de la aprobación de la Ley Núm. 239 de 22 de diciembre de 2014, la cual enmendó solamente el aludido artículo de la Ley de Municipios Autónomos, en conjunto con la Ley Electoral. Con esta enmienda se incluyó que se debía notificar al organismo directivo estatal, ya que anteriormente sólo se debía notificar al organismo local.

## C.

La Ley Electoral del Estado Libre Asociado de Puerto Rico, en su Art. 9.006(4), establece una elección especial para llenar la vacante del cargo de Alcalde o legislador municipal. 16 LPRA sec. 4146(4). Esta disposición fue enmendada en el año 2014 al aprobarse la Ley Núm. 239-2014. Antes de la enmienda, ésta indicaba que cuando ocurriera una vacante se tenía que cubrir según el Art. 3.004 de la Ley de Municipios Autónomos. Con la enmienda, se eliminó esa referencia y se creó un nuevo proceso que se aplicará conforme, y en unión, al precitado artículo de la Ley de Municipios Autónomos, que también fue enmendado.

Ahora bien, se determinó que en caso de renuncia, muerte, destitución, incapacidad total y permanente, o cualquier otra causa que provoque una vacante fuera del año electoral, la Legislatura Municipal deberá notificar de la vacante a los organismos directivos a nivel local y estatal del partido político que eligió al alcalde. Sin embargo, le corresponderá al organismo estatal celebrar la elección especial entre los electores afiliados al partido dentro de un término de sesenta (60) días. En caso que la vacante ocurra en año electoral, se deberá notificar al organismo directivo local del partido político que eligió al alcalde. En esta ocasión, le corresponderá al mencionado organismo directivo local indicar a la Legislatura Municipal el candidato que sustituirá al Alcalde electo, dentro del término de quince (15) días desde la notificación. Si ello no ocurriera, se deberá notificar al Presidente del partido político para que proceda a cubrir la vacante con el candidato que proponga el cuerpo directivo central del partido.

**III.**

Discutida la normativa jurídica pertinente, procedo a exponer las razones que me llevan a disentir del curso de acción seguido por una Mayoría de este Tribunal en el caso de epígrafe.

Como expuse, los peticionarios acuden ante nos para que revoquemos la Sentencia emitida por el Tribunal de Apelaciones, mediante la cual determinó que ante la

vacante surgida por la no juramentación del Alcalde electo de Gurabo, es de aplicación el Art. 9.006(4) de la Ley Electoral. Así, el foro apelativo intermedio concluyó que con la aprobación de la Ley Núm. 239-2014 hubo una derogación tácita del Art. 3.003 de la Ley de Municipios Autónomos.

Como señalé, la Ley Núm. 239-2014 enmendó la Ley Electoral y también el Art. 3.004 de la Ley de Municipios Autónomos. De esta forma, la Asamblea Legislativa uniformó y atemperó ambas disposiciones legales. Así, en todas las causales de vacantes, excepto el acto de no tomar posesión, contemplado expresamente en el Art. 3.003 de la Ley de Municipios Autónomos, la Rama Legislativa incluyó que se debe notificar al organismo directivo estatal y el local del partido político al cual pertenecía el Alcalde. No obstante, a pesar que la mencionada enmienda modificó el Art. 3.004, ésto no ocurrió con el Art. 3.003. Por el contrario, este artículo quedó inalterado.

Ante ello, en este caso nos correspondía determinar si aun cuando el Art. 3.003 quedó inalterado con la enmienda de la Ley Núm. 239-2014, hubo una derogación expresa o tácita. Es decir, debíamos determinar si la enmienda del año 2014 se limitó al Art. 3.004 o también aplica al Art. 3.003 de la Ley de Municipios Autónomos, por lo cual habría una contradicción y una posible derogación. Ello resulta importante a los fines de resolver cuál disposición legal es la aplicable cuando el

Alcalde electo no toma posesión de su cargo en el término indicado en la ley.

De un análisis de ambas disposiciones legales se desprende con meridiana claridad que si bien las dos contienen algún proceso en el cual se seleccionará un nuevo alcalde al surgir una vacante, cada cual aplica a circunstancias distintas y no son contrarias ni irreconciliables. En ese sentido, la aplicación de una disposición frente a la otra dependerá de la razón que motivó la vacante. Específicamente, el Art. 9.006(4) de la Ley Electoral expone como sigue:

> **En caso de renuncia, muerte, destitución, incapacidad total y permanente o por cualquier otra causa que ocasione una vacante permanente en el cargo de alcalde,** fuera del año electoral, la Legislatura Municipal notificará por escrito al organismo directivo local y al organismo directivo estatal del partido político que eligió al alcalde cuyo cargo queda vacante. 16 LPRA sec. 4146 (énfasis suplido).

Mientras, el Art. 3.003 dispone:

> **Cuando el alcalde electo no tome posesión de su cargo en la fecha dispuesta en este subtítulo,** y si ha mediado justa causa para la demora, se le concederá un término de quince (15) días para que así lo haga. La Legislatura solicitará un candidato para cubrir la vacante al organismo directivo local del partido político que eligió al alcalde. La Legislatura formalizará esta solicitud en su primera sesión ordinaria siguiente a la fecha de vencimiento del término antes establecido y el Secretario deberá tramitarla de inmediato por escrito y con acuse de recibo. El candidato que someta dicho organismo directivo local tomará posesión inmediatamente después de su selección y

desempeñará el cargo por el término que fue electa la persona que no tomó posesión del mismo. Cuando el organismo directivo local no someta un candidato dentro de los quince (15) días siguientes a la fecha de recibo de la solicitud de la Legislatura, el Secretario de ésta notificará tal hecho por la vía más rápida posible al Presidente del partido político que eligió al alcalde. Dicho Presidente procederá a cubrir la vacante con el candidato que proponga el cuerpo directivo central del partido que eligió al alcalde cuya vacante debe cubrirse.

Cualquier persona que sea seleccionada para cubrir la vacante ocasionada por un alcalde electo que no tome posesión del cargo, deberá reunir los requisitos de elegibilidad establecidos en la sec. 4101 de este título.

El Presidente de la Legislatura Municipal o el Presidente del partido político de que se trate, según sea el caso, notificará el nombre de la persona seleccionada para cubrir la vacante del cargo de alcalde a la Comisión Estatal de Elecciones para que dicha agencia tome conocimiento del mismo y expida la correspondiente certificación (énfasis suplido).

Una lectura aislada de la enmienda del año 2014 al Art. 9.006(4) de la Ley Electoral y su frase "o por cualquier otra causa" pudiera inducirnos a concluir erróneamente que ello incluye el caso de un Alcalde electo que no juramente. Ciertamente, ello provocaría un desfase entre el Art. 3.003 de la Ley de Municipios Autónomos y las disposiciones de la Ley Electoral, lo cual podría interpretarse como una derogación tácita del Art. 3.003. No obstante, de un examen de la codificación anterior y el historial legislativo de la Ley de Municipios Autónomos se desprende que la referida frase está presente en el Art. 3.005 desde su aprobación, es decir, desde el 1991. Así,

pues, la normativa hace referencia a que se seleccionará al Alcalde en una serie de circunstancias más allá de la renuncia y la no juramentación del Alcalde electo, conforme el proceso del Art. 3.004.

Particularmente, de una lectura armoniosa de los artículos de la Ley de Municipios Autónomos surge que, desde su origen, el legislador instituyó un procedimiento separado para el supuesto de un Alcalde electo que no tomó posesión dentro del ciclo electoral. Es decir, el legislador mantuvo, desde el inicio de esa ley, un articulado separado y distinto para la causal que hoy nos ocupa. Específicamente, cabe destacar que, desde su aprobación, la Ley de Municipios Autónomos cobija dos situaciones distintas a saber: (1) cuando un alcalde electo no juramenta, dejando inconcluso el ciclo del año electoral, proceso dirigido por el organismo directivo local; y (2) cuando el alcalde renuncia, muere, es destituido, tiene una incapacidad total y permanente, o cuando surja otra causa, cuyo proceso actual es dirigido por el organismo directivo estatal mediante votación especial, si es fuera del año electoral, y dirigido por el organismo directivo local si es dentro del año electoral.

Como corolario de lo anterior, y de una lectura equilibrada de esos artículos, concluyó que la frase "o por cualquier otra causa que ocasione una vacante permanente en el cargo de alcalde" incluida en el Art. 3.005 de la Ley de Municipios Autónomos no contempla el

caso de un Alcalde electo que no juramenta inmediatamente después de la elección general. Si así fuera, el Art. 3.003 nunca hubiese tenido una razón de ser. No podemos llegar a esa interpretación porque nos conduciría a un absurdo y a echar por la borda la codificación que rige desde la creación de la Ley de Municipios Autónomos, la cual contempla un procedimiento especial que no fue derogado por las enmiendas del año 2014. Tampoco sería armonioso con la intención legislativa y los restantes artículos que regulan los procesos de otras causales de vacantes, habida cuenta que el legislador procuró evitar una duplicidad de procesos electorales con el gasto público que ello acarrea. En ese sentido, no debemos interpretar una dicotomía tajante entre "año electoral" y "año no electoral" que nos conduzca al absurdo de darle la espalda al procedimiento expresamente dispuesto para el Alcalde electo que no tomó posesión en el término provisto dentro del ciclo electoral.

A la luz de lo expuesto, concluyo que cuando la Asamblea Legislativa incluyó en el Art. 9.006(4) de la Ley Electoral la frase "o por cualquier otra causa que ocasione una vacante permanente en el cargo de alcalde", no pretendió derogar el Art. 3.003 de la Ley de Municipios Autónomos. Por el contrario, surge del historial legislativo que la Asamblea Legislativa tuvo la intención de armonizar ambas leyes. Ello se sustenta con el hecho de que a pesar que se enmendó el Art. 3.004, el Art. 3.003

quedó inalterado. Si el legislador hubiera querido derogarlo lo hubiera hecho expresamente en la enmienda del año 2014.

No albergo dudas de que solo la Ley de Municipios Autónomos contempla específicamente el proceso a seguir en circunstancias en que la vacante ocurre cuando el Alcalde electo no toma posesión de su cargo. Del historial de ambas disposiciones, surge claramente y libre de ambigüedad que el Art. 3.003 no ha sido derogado de forma expresa o tácita.

En consecuencia, resulta forzoso concluir que al permanecer inalterado el Art. 3.003 de la Ley de Municipios Autónomos, la Asamblea Legislativa consideró como inconcluso el ciclo electoral en que un Alcalde electo no toma posesión. En ese sentido, mantuvo intacto el referido artículo, para atender el acto de culminar el ciclo electoral mediante el método alterno expresamente contemplado en ese articulado. De este modo, ante la cercanía del evento electoral no se incurre en una duplicación de eventos electorales, lo que es una solución práctica en tiempos de austeridad y, de igual forma, es cónsono con la intención del legislador de no incurrir en elecciones especiales durante ciclos electorales.

Al amparo de los fundamentos expuestos, disiento del curso de acción seguido por una Mayoría de este Tribunal que determina dar "no ha lugar" a la solicitud en auxilio de jurisdicción y a la petición de *certiorari* presentada.

Con tal proceder, avalan la sentencia del Tribunal de Apelaciones, la cual concluye que con la aprobación de la enmienda a la Ley Electoral mediante la Ley núm. 239-2014 se derogó de forma tácita el Art. 3.003 de la Ley de Municipios Autónomos. Sin duda, este Tribunal debió acoger el recurso y concluir que aún sigue vigente el mencionado articulado. Por consiguiente, considero que procedía resolver que cuando un alcalde electo no juramenta en determinado ciclo electoral, dentro del término señalado por la ley, y se produce una vacante, el nuevo alcalde debe ser seleccionado al amparo del Art. 3.003 de la Ley de Municipios Autónomos y no conforme a la Ley Electoral.

Lo anterior es cónsono con la intención legislativa. Debemos recordar que este Tribunal ha sido enfático en determinar que al tener dos disposiciones legales que aparentan estar en contradicción, los tribunales deben realizar una interpretación armoniosa de la ley, dentro de lo posible, de manera que se logre su compatibilidad y no su contradicción. Por lo tanto, los tribunales no deben concluir innecesariamente que unas disposiciones están en conflicto cuando si pueden ser leídas de forma armónica. A esos efectos, sólo cuando las disposiciones no puedan ser armonizadas es que procede que se declaren contradictorias, con el efecto que conlleve en cada caso particular. Banco Santander de Puerto Rico v. Santana Serrano, *supra*, págs. 12-13.

A tenor con el derecho aplicable expuesto, opino que erró el Tribunal de Apelaciones al revocar la Sentencia dictaminada por el Tribunal de Primera Instancia. El historial del Art. 3.003 de la Ley de Municipios Autónomos y la uniformidad del lenguaje utilizado por el legislador, tanto al aprobar la Ley de Municipios Autónomos, así como la enmienda del año 2014, me lleva a la conclusión de que el citado artículo nunca ha sido derogado. Más aún, es la única disposición existente en nuestro ordenamiento jurídico que contempla el proceso para llenar la vacante cuando un alcalde electo no toma posesión de su cargo dentro del ciclo electoral en el cual fue electo, tal como ocurrió en este caso.

**IV**

Por los fundamentos que anteceden, disiento del curso de acción seguido por una Mayoría de este Tribunal. En su lugar, proveería "ha lugar" a la *Solicitud Urgente en Auxilio de Jurisdicción* y a la petición de *certiorari* presentadas. Asimismo, hubiera revocado el dictamen emitido por el Tribunal de Apelaciones y determinado que ante la vacante creada por razón de que el Alcalde electo de Gurabo no juramentó, el proceso aplicable para seleccionar a su suplente es el dispuesto en el Art. 3.003 de la Ley de Municipios Autónomos.

Luis F. Estrella Martínez
Juez Asociado